## CLARK v. EMPLOYERS MUT. CASUALTY CO. OF DES MOINES, IOWA.

### No. 10857.

Circuit Court of Appeals, Eighth Circuit.

July 7, 1937.

668

Bernard R. Stone, of Omaha, Neb. (George B. Boland, of Omaha, Neb., on the brief), for appellant.

Joseph H. McGroarty, of Omaha, Neb. (Joseph T. Votava and Edward Sklenicka, both of Omaha, Neb., on the brief), for appellee.

Before GARDNER, WOODROUGH, and BOOTH, Circuit Judges.

WOODROUGH, Circuit Judge.

On December 28, 1934, Fred Clark suffered personal injuries as the result of collision caused by the negligent operation of an automobile by one Joseph B. Chauncey and, having sued for the tort, recovered judgment against Chauncey in the sum of $4,500. Execution against Chauncey was returned unsatisfied and Clark then brought this action at law against the Employers Mutual Casualty Company of Des Moines, an Iowa insurance company, seeking to recover the amount of his judgment, interest, costs, and attorneys' fees from the insurance company.

It appears that on February 20, 1934, the company had issued and delivered its garage dealers' public liability policy to the assured Chauncey Motor Company (which was owned by Joseph B. Chauncey) insuring against loss from automobile accidents occurring during the period beginning March 22, 1934, and ending on the 22d day of March, 1935. The coverage of the policy included the risk of such an accident as was occasioned to Clark by Chauncey's operation of the car and the company promised to defend suits and pay indemnity for losses within the coverage, not exceeding $5,000 for any one injury. The policy also provided that if execution on a final judgment against the assured in an action covered by the policy he returned unsatisfied the judgment creditor should have a right of action against the company to the same extent that the assured would have had such assured paid such final judgment.

The defense of the company, set out in its answer to the plaintiff's petition, was that the policy issued by it was canceled by and at the request of the said Joseph B. Chauncey through his agent prior to the date of the accident and so was not in force or effect at that time. In his reply the plaintiff Clark alleged that Chauncey did not authorize or empower any agent to cancel the policy for him or in his behalf and that any purported authority to any alleged agent to cancel the policy for said Joseph B. Chauncey was obtained by fraud and deceit and that the defendant insurance company participated in said fraud in that said alleged agent was in truth and fact an agent of the defendant insurance company, which fact was wrongfully and fraudulently withheld from the said Joseph B. Chauncey by said agent and the defendant; that any purported cancellation by any alleged agent of the said Joseph B. Chauncey was void and that said policy was in force and effect on the date of the accident.

As it appeared that the insurance company had issued the policy, that it included the loss and the unsatisfied judgment within its coverage and that the term of the insurance specified in the policy began before the accident and did not end until some months afterwards—the substantial issue was whether the policy had been canceled before the accident. The insurance company "having interposed cancellation as an affirmative defense," drew upon itself the burden of proving it. Spann v. Commercial Standard Ins. Co. (C.C.A.) 82 F.(2d) 593, 595; Aetna Ins. Co. v. Kennedy (May 17, 1937) 57 S.Ct. 809, 81 L.Ed. ——.

The policy evidenced an Iowa insurance contract and the plaintiff relied upon the statute of Iowa which prohibits the forfeiture of any policy for nonpayment of any premium unless the company shall serve notice in writing upon the insured when

the insurance will be canceled, which shall be not less than thirty days after the service of the notice, by mailing in a registered letter, and no cancellation shall take effect until the time thus fixed, anything in a separate agreement to the contrary notwithstanding. Code Iowa 1935, § 8959. Although no registered mail notice of cancellation of the policy had been sent to Chauncey before the accident, the trial court was of opinion that the policy had been canceled and was not in force at that time, and on motion of the insurance company at the close of the testimony, directed a verdict and entered judgment of dismissal on the verdict. The plaintiff Clark appeals.

There was evidence that Chauncey had bought the policy in question through a soliciting agent of the insurance company and that it was a renewal of a similar policy covering the same risks during the preceding year. Although it was issued in February, 1934, to take effect in March following, Chauncey had not paid the premium in whole or in part when the agent called on him in April or the first of May of that year and asked for the money, the premium for the year being $52.20. Chauncey inquired of the agent if the company did not have some arrangement so that he (Chauncey) could pay the premium in installments. The agent said they had and he would find out about it. Shortly afterwards the agent brought Chauncey a note to sign, and Chauncey signed it without reading it and made a partial payment of $14.44 on the premium. Chauncey asked the agent if the policy was in force during the time, and the agent explained that it was, and that the insurance company always had to send out notice of cancellation by registered mail before it could be canceled. Chauncey testified that he had at all times retained the policy in his possession and that prior to the accident he had never received any notice that it had been canceled.

The "note" presented to Chauncey for his signature by the soliciting agent of the insurance company is a document on printed form containing the usual words and figures of a note promising to pay to Premium Payment Service $41.76 in eight monthly installments. The sum so promised includes a "financing charge" of $4. The document contains also a contract of assignment and irrevocable appointment of attorney. It recites that the note is given in consideration of the Premium Payment Service "financing" payment of the policy issued by defendant Employers Mutual Casualty Company, and that default by Chauncey in any payment shall make all unpaid payments due at the option of the payee. By the terms of the contract, Chauncey assigns all return premiums on his policy in case of the cancellation thereof to said Premium Payment Service and irrevocably appoints Premium Payment Service to give notice (to the insurance company) as required by law, and, without notice to the insured, to do all other things necessary to effect cancellation of his insurance policy, and to receive and apply the said return premiums to the satisfaction of the note. There are no provisions of restriction or limitation upon the power given Premium Payment Service to effect cancellation of the insurance without notice to the insured. The soliciting agent of the insurance company witnessed the document. He testified that, although he had represented the defendant for about a year, he did not know that Premium Payment Service was a different organization than the defendant Employers Mutual Casualty Company. The defendant claimed, however, that Premium Payment Service was a partnership entity entirely distinct and separate from the insurance company.

The evidence shows that Messrs. John A. Gunn and John W. Gunn (father and son) are the active managing officers of the defendant insurance company and devote practically their whole time at the company's place of business to the company's affairs, but they have also engaged in the business of "financing" premiums for the customers of the insurance company. They carry on that business for their own individual profit under the designation Premium Payment Service, but Mr. John W. Gunn testified that it was also "established for the purpose of improving collections of premiums of the insurance company." "It is possible that one of the reasons it was established was for the purpose of improving sales and to meet competition of other insurance companies who sell policies on a deferred payment plan." "The method of operation is to take a note and agreement from the assured, which agreement contains a power of attorney giving the Premium Payment Service the right to cancel the policy at any time it desires to do so." Then the amount of the unpaid portion of assured's annual premium would be charged up against the open account entitled "Premium Payment Service" on the books of the insurance company and the books of the in-

surance company would reflect that the annual premium had been paid.

The "financing" business is carried on in the insurance company's offices and the office work connected with it is done by the insurance company's employees, who receive small additions to their regular pay for the extra work.

The assured Chauncey failed to pay the installment of the note due September 15, 1934, and after his default the policy was canceled by the insurance company of date September 29, 1934. The mechanics of such cancellation were: Mr. John W. Gunn procured the policy application from the general files department of the insurance company and indorsed thereon that the policy was to be canceled. That was then sent back to the company's accounting department, which indorsed upon an account card that the policy was canceled as of that date and the open account entitled "Premium Payment Service" was credited with the return premium figured to be due.

The plan of the business by which Mr. Gunn and his son "finance" the policyholders of their company who pay for their insurance in monthly installments instead of in a lump sum contemplates what is, in effect, an assignment of the interest which each assured has in his policy under the Iowa law (independent of any loss that may be payable under it). As has been pointed out, section 8959 guarantees the assured against cancellation of his policy by the company without registered mail notice and grace and sections 8960, 8961, and 8963 preserve to policyholders the right to cancel their policies upon paying or becoming liable to pay an amount not to exceed short rate premiums which must be figured out by the state insurance commissioner. Section 8961 requires insurance companies to attach a table of such short rates to every policy issued, and sections 8963 and 8960 authorize every policyholder to require the insurance company to cancel his policy at any time on giving five days' notice to the company. Upon such cancellation the insurance company may retain only the pro rata premium and must return any balance in its hands to the policyholder. The down payment of a small amount by the policyholder and a payment each month by him keeps a sufficient balance which the company is so obligated to pay on five days' notice to cover the contemplated advancements by Mr. Gunn and his son. It is the company's obligation to repay the unearned premium which is the subject of the assignment.

On reading sections 8959, 8960, 8961, and 8963 together, it is apparent that the intent of the Iowa insurance law is to protect policyholders in two ways. First, they are protected against any cancellation of their policies for any nonpayment of premiums without notice by registered mail, specifying a grace period of thirty days. Second, they are protected against being held liable by the insurance company for more than short rate payment for insurance during the period of protection, being accorded the right to require cancellation at any time on five days' notice. Insurance contracts being largely on company printed forms, the legislative intent is manifest that no matter what may be incorporated into such contracts signed by policyholders or into separate agreements concerning the same, no valid contracts can be made to deprive policyholders of the above protection.

Accordingly, we think it clear that if Chauncey had made his Premium Payment Service contract directly with the insurance company, that is, if he had assigned his interest in his policy to the company and had empowered the insurance company to cancel the insurance at its own will or discretion without registered mail notice to him and without his days of grace, the contract would fall squarely within the prohibition of section 8959 of the Iowa Code and would have been made void by the terms of the statute. That section not only forbids an insurance company to cancel a policy for nonpayment of premium without such registered mail notice and grace to its assured, but, in order to prevent that being done indirectly which is forbidden to be done directly, the concluding words of the section are: "Anything in * * * a separate agreement to the contrary notwithstanding." The section would avoid any agreement attempted to be made by a policyholder with the company to waive registered mail notice and the statutory grace if the agreement were contained in a policy, and a separate agreement, such as a note which would undertake to make the company attorney in fact for the insured to waive the registered mail notice and grace would also come within the letter of the statute and be void.

The question is whether the result is different when the president and managing officer of the insurance company undertake themselves to carry on the business of ob-

ligating their policyholders to such contracts.

■ Corporations can act only through their agents. Although the contract in the present instance names Premium Payment Service as the one who may effect cancellation of Chauncey's policy at will and without any notice to him, and may hold him to the payment for the whole term, the managing officers of the insurance company are the identical persons so described. It seems to be of no moment whether they be designated "Premium Payment Service," or "John W. Gunn and Son", or "Managing Officers of the Insurance Company actively engaged in carrying on its business." The installment contract which constitutes "Premium Payment Service" the assured's attorney to give five days' notice of cancellation to the company means that Mr. Gunn may, in his own discretion and at his own will, give the notice to himself. And he is the one who is given the option to hold the insured to the payment of the whole premium.

■ We think the contract which authorizes the managing officers of the insurance company, in their discretion, to effect cancellation of their company's outstanding policy without registered mail notice and without the grace period prescribed by the statute and which empowers them to hold the insured to pay the whole premium amounts, in all practical intent, to the same thing as authorizing the insurance company itself to do so. Such a contract must be held void because the statute declares the policy of the state and prohibits the making of such insurance contracts, either by policies or by separate agreements. No other fair intendment can be drawn from the plain language used in the statute.

Such construction of the statute does not conflict with the line of decisions like Warren v. Franklin Fire Ins. Co., 161 Iowa, 440, 143 N.W. 554, 555, L.R.A.1918E, 477. In that case a property owner made an arrangement with an insurance agent to reinsure the property upon expiration of policies and in the event any policy was canceled to insure in another company. The agent received instruction from a company which had issued a policy covering the property to cancel the same and he thereupon obtained a policy from another company. The Supreme Court of Iowa said: "Ordinarily he must have caused the statutory notice to be served on the insured, but this the latter had waived in advance by directing him to reinsure in another company, and upon this being done the cancellation became as effective as though notice had been served. Not only were his employments not inconsistent with the performance of his duty toward each but they were in harmony and well adapted to the accomplishment of the design of each. * * * [Citations.]"

But the conflicting interests of Mr. Gunn in the situation here presented are apparent. As managing agent of the insurance company his duty to the company was to keep uncanceled as much good insurance as possible and to cancel bad risks as quickly as possible, but to see to it that the company complied with its statutory duties to its policyholders as to notice and grace. As to any agency for the assured, Chauncey's primary interest and statutory right was not to suffer forfeiture of his policy without the notice and grace guaranteed by statute and not to be deprived of the right to terminate the insurance and cut off liability. But Mr. Gunn's personal interest, under the name of Premium Payment Service, was to earn the $4 fee for the financing service (that is, for himself) with the least expense and delay to himself. The sooner the policy was canceled out the sooner the $4 fee specified in the contract was earned and with the least use of his money. From the officer's personal standpoint, Chauncey need not be notified or accorded a grace period, and no matter how good the risk was for the company it was against the interest of Premium Payment Service to continue it.

In Niagara Fire Ins. Co. v. Raden, 87 Ala. 311, 5 So. 876, 878, 13 Am.St.Rep. 36, an insurance policy contained the provision that the insurance might be terminated by the company on giving notice to the "person who may have procured this insurance to be taken." The company relied on cancellation made by giving notice to the agent who procured the insurance for the insured. The court said: "Smith is the agent of the company to issue the policy. He therefore occupied an ambiguous attitude, or a double agency involving conflicting rights and duties. The provision above cited was not intended to cover a case of this character. It could not have been contemplated that the agent of the company should give notice to himself, as agent also of the insured, of the cancellation or rescission of the contract of insurance, nor that he should pay to himself the return premium required to be paid under the terms of the

contract, without which payment there could be no cancellation. If susceptible of this construction, the provision would be invalid as in violation of all sound principles of public policy, and we would so declare it. The law will not permit an agent thus to serve two masters, with conflicting interests."

The Iowa Supreme Court recognized in Warren v. Franklin Fire Ins. Co., quoted from above, that the purpose of the insurance statute was to prevent any terminating of a policy without the notice that would afford an assured ample time to negotiate for other insurance. That purpose was fully accomplished in the case considered by the Iowa court and in the numerous cases cited. In Spann v. Commercial Standard Ins. Co., 82 F.(2d) 593, 597, this court said: "We recognize that it is well settled by the authorities that an agent to procure insurance and to keep the property insured may accept notice of cancellation. See e. g., Orkin v. Standard Fire Ins. Co. of New Jersey, 99 N.J.Law, 114, 122 A. 823, 824; Firemen's Ins. Co. v. Simmons, 180 Ark. 500, 22 S.W.(2d) 45, 46. * * * The reason underlying the rule is that as the agent is to keep the property insured, notice should be given to him, rather than to the principal, in order that he may at once secure substituted insurance. Schauer v. Queen Ins. Co., 88 Wis. 561, 60 N.W. 994, 995. * * * Acceptance of a notice of cancellation from the appellee as an incident to obtaining insurance elsewhere is one thing; sending the policy in of his own accord for the purpose of stopping the insurance on the truck is another." But the decision of the Iowa court does not imply that the Iowa statutes sanction a contract between a policyholder and the managing officers of an insurance company, conferring on such officers unrestricted power to cancel the policy without any notice to the insured, or, at their will, to hold the insured to liability for the whole term of the insurance.

We are not called on to consider plans for "financing" premium payments in general. It was held in Chamberlain v. Employers' Liability Assurance Corporation, 289 Mass. 412, 194 N.E. 310, that one insured under a motor vehicle liability policy could lawfully delegate to a third person the authority to effect cancellation of his policy and the cancellation effected by the agent in that case was upheld. It appeared, however, that the insured had constituted the third person his agent to procure the insurance in the first place; that the authority to effect cancellation was conditioned upon default in payment of the note given to the agent for the insurance; and that notice of cancellation was given to the insurance company and to the insured. The particular questions here involved were not presented.

Dawson v. Concordia Fire Ins. Co., 192 N.C. 312, 135 S.E. 34, is relied upon by the insurance company here. There also a contract was made between the insured and the agent who procured the insurance, and it was agreed that upon failure of the insured to pay to the agent the amount due as premiums the agent might act for the insured to procure a cancellation of the insurance by the company. The court upheld the contract, but without discussion of the question which we deem controlling here. It appeared to the court that the agent who had procured the insurance had fully performed all duties he owed to the insurance company "when the policies were issued" and in the matter of procuring cancellation as agent of the insured there was no inconsistency with any duty owed the company. The Iowa case of Warren v. Franklin Fire Ins. Co., supra, is cited, but the facts in the two cases are not closely analogous.

It need not be decided that a policyholder could not lawfully make such a finance contract with the managing officers of an insurance company or with the company itself consistently with the Iowa statutes if the contract preserved the insured's right to the statutory grace and notice of cancellation, and his statutory right to terminate his obligation on five days' notice. But where the contract is between the policyholder and the insurance company, or the insurance company's managing officers, the validity must be tested by the statute. The contract which confers on the managing officers power at will to cancel the insurance without statutory grace and notice, or, in their discretion, to hold the insured to liability for the whole term and which provides a fee to the officer personally for services inconsistent with his duties to the company, must be held to contravene the statute. It violates the letter and the spirit.

It is argued that Mr. John W. Gunn and his son had money of their own invested in Premium Payment Service and that on that account they ought to be re-

garded as third parties, independent of the insurance company. It cannot be denied that they did have, as stated, an individual interest different from their interest as officers of the insurance company. It would appear that such interest was entirely incompatible with their position with the insurance company. But we consider their position with the company as determinative of the character of the contract involved herein. In practical effect and working out the installment plan of premium payment was really company business. The business was brought in by the company's agents in the field—from its nature the officers could hardly have gotten it in any other way. In this case the soliciting agent of the company in the field obtained the contract from Chauncey upon the assurance that the company had an installment payment plan. Chauncey had no interest except to get and keep insurance and, no matter how his payments might be denominated, what he was paying was the cost of his insurance and nothing else. The business was done in the company's offices and by its employees. Other companies were selling their insurance on the installment plan and the plan here involved helped this company to meet such competition and undoubtedly the company business was augmented by the installment business. The fact that, as between the company and its managing officers, the officers were diverting a $4 charge out of the business from the policyholders to their own pockets was merely incidental. Such being the real situation, the courts ought not to let the business be so carried on as to defeat the statute and deprive the insured of rights the Legislature, by its enactments, preserved to them. They ought rather to strike down the unlawful features of the business—that part that violates the statute. We conclude that, as managing officers, Mr. Gunn and his son were forbidden by the statute to contract for the power to effect cancellation of the insurance without statutory notice to the insured, or to compel the insured to be liable for the whole term.

The invalidity of the contract to cancel the insurance without statutory notice results from the statute as well as from those principles of the law of agency which also frown upon dual agencies where interests of different principals conflict—as the interests of the insurance company, the insured, and the "finance" partnership do in this case.

As the evidence did not conclusively show that the policy was lawfully canceled, the judgment should be reversed and the case remanded for a new trial.

Reversed and remanded.