# CIRCUIT COURT OF THE CITY OF ROANOKE

Frank Walter Haley

v.

United States
Fidelity & Guaranty Co.

Case No. (Law) 2849

John R. Patterson,
Adm'r., etc.

v.

United States
Fidelity & Guaranty Co.

Case No. (Law) 2983

June 23, 1976

BY JUDGE ROBERT J. ROGERS

These cases, consolidated for trial by agreement of the parties, were brought to recover from defendant insurance company (USF&G) judgments obtained by the plaintiffs following an automobile accident in which one Herbert Paschall, Sr., was operating a vehicle with the permission of its owner, James Hardy Poindexter. The judgments, $10,000 for Haley and $5,000 for Patterson, resulted from injuries to Haley and the death of Patterson's decedent.

USF&G had issued a liability insurance policy on the vehicle to Poindexter. However, USF&G denied liability to both plaintiffs on the ground that the policy had been cancelled approximately eight months before the accident. The issue before the Court is whether the cancellation was effective.

Through interrogatories, requests for admissions, and stipulations, the parties have established the facts in the case which are not in dispute and which raise a purely legal question. There being no material dispute in the facts, all parties have moved for summary judgment.

On April 12, 1972, Poindexter, a 31-year old truck driver from Bedford, Virginia, applied for a policy of liability insurance through the Frank Scott Agency, an independent insurance broker, located in Bedford. Pursuant to said application, a policy, number AF30786, was issued by USF&G, effective date April 12, 1972, and expiration date April 12, 1973. The amount of the premium was listed as $128.00.

Rather than paying the entire premium, the insured Poindexter was offered a premium finance plan which provided for a finance charge, a down payment of $25.60, and payment of six monthly installments of $17.46 each, commencing May 12, 1972. A note in favor of the Frank Scott Agency was executed by Poindexter on a form (DM24 50M), which was provided to the Frank Scott Agency by The Del Mar Company (Del Mar), a wholly owned subsidiary of USF&G. In the same form, the note executed by Poindexter was assigned to Del Mar, and the latter then paid the unpaid balance of the premium to USF&G. The insured Poindexter was thereafter advised by Del Mar that all installments under the note were to be paid to it at its office in Baltimore, Maryland.

No installment was ever paid by Poindexter. On June 1, 1972, Del Mar dispatched a form communication (D.M.39) to USF&G, advising that Poindexter was in default and cancelling the policy and requesting USF&G to pay to Del Mar the return premium. Copies of this communication were mailed to Poindexter and the Frank Scott Agency. The form was received by the latter as well as by USF&G. There is no evidence as to whether the insured Poindexter did or did not receive the notice.

The note signed by Poindexter and assigned to Del Mar provided that, on default of an installment, the entire balance would become due at the holder's election. The note further authorized the holder to cancel the policy upon such default.

The policy issued by USF&G to Poindexter contained the following provision relating to cancellation:

> 16. *Cancelation.* This policy may be canceled by the Insured named in Item 1 of the declarations by surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter the cancelation shall be effective. This policy may be canceled by the Company by mailing to the Insured named in Item 1 of the declarations at the address shown in this policy written notice stating when not less than 10 days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be

sufficient proof of notice. The time of the surrender of the effective date of cancelation stated in the notice shall become the end of the policy period. Delivery of such written notice either by such insured or by the Company shall be equivalent to mailing.

The cancellation clause was modified by an "Amendment to Termination Provisions," which limited USF&G's cancellation privileges. Specifically, the amendment prohibits USF&G from cancelling after the policy has been in effect for sixty days unless, *inter alia*:

> 1. The named insured fails to discharge when due any of his obligations in connection with the payment of premium for this policy or any installment thereof, whether payable to the company or its agent either directly or indirectly under any premium finance plan or extension of credit. . . .

USF&G takes the position that, under the policy provisions, the insured had the right to cancel the policy and, in fact, did cancel the policy through the written notice from Del Mar of June 1, 1972. USF&G further contends that the insured properly authorized Del Mar to cancel the policy on default of any installment due under the note executed by the insured and assigned by the general agent to Del Mar.

Plaintiffs assert that the cancellation was not effective because of the failure of USF&G or Del Mar to provide written notice of cancellation through one of the methods described in § 38.1-381.1, Code of Virginia, which at the time the policy was cancelled provided as follows:

> No written notice of cancellation sent by mail by an insurer to an insured in accordance with the provisions of a motor vehicle insurance policy shall be effective unless it is sent by registered or certified mail or unless at the time of the mailing of said notice, the insurer has obtained from the Post Office Department a written receipt showing the name and address of the insured and the insurer has retained a duplicate copy of said notice upon which is endorsed a certificate by the insurer that the duplicate copy is a copy of the notice which was sent to the insured in the mail for which said receipt was obtained.

Plaintiffs contend that Del Mar was USF&G's agent and that the former's effort to cancel the policy under the insured's authority was ineffective because it circumvented the method of cancellation prescribed by the Virginia statute. The Court agrees and finds that the policy was not effectively cancelled.

The Virginia Supreme Court has made it clear that an insurance company relying upon cancellation of the policy as its sole defense has the burden of proving effective cancellation. *National Union Fire Ins. Co. v. Dixon*, 206 Va. 568, 145 S.E.2d 187 (1965). The same Court has also made it clear that legislation relating to cancellation by an insurance company is to be liberally construed in favor of injured parties for whose benefit the legislation was enacted. *Gregory v. Providence Washington Ins. Co.*, 214 Va. 134, 198 S.E.2d 616 (1973); *Storm v. Nationwide Mutual Ins. Co.*, 199 Va. 130, 97 S.E.2d 759 (1957). While no reference is made to § 38.1-381.1, in the cancellation provisions of the policy concerned, that section, by its terms, becomes a part of the policy and strict compliance with its provisions is required to achieve effective cancellation. In *Gregory v. Providence Washington Ins. Co., supra*, the mere failure of the insurer's agent to sign the certificate prescribed in the last alternate method in § 38.1-381.1 prevented effective cancellation of the policy involved.

In the instant case, Del Mar is a wholly owned subsidiary of USF&G. The latter concedes that Del Mar was not the insured's agent, but contends that, for purposes of cancellation only, Poindexter "authorized Del Mar Company to act on his behalf." The contention is inconsistent with the concession.

USF&G contends that the cancellation-authorization executed by Poindexter constituted a power of attorney as opposed to an agency, and that, in cancelling the policy, Del Mar acted not as Poindexter's agent, but as his attorney in fact. However, aside from the fact that a power of attorney does in effect create an agency relationship, however limited it may be, 3 American Jurisprudence 2d, *Agency*, § 23; see also *Daniels v. Nationwide Mutual Ins. Co.*, 258 N.C. 660, 129 S.E.2d 314 (1963), it is significant that the notice of cancellation, which USF&G says was sent by Del Mar on behalf of Poindexter pursuant to the power of attorney, is signed by Del Mar in its own right and capacity and not as attorney in fact for Poindexter. It is further significant that, in the Amendment of Termination Provisions, referred to above, the policy in paragraph Bl, relating to cancellation, refers to the company (USF&G) "or its agent . . . under any premium finance plan."

The mandate for liberal construction of cancellation legislation in favor of an injured party will not permit the distinction between agency and power of attorney urged by USF&G to justify its position. Del Mar, a wholly-owned subsidiary of USF&G, was the latter's agent, and the effort to constitute Del Mar as attorney or agent for Poindexter for purposes of cancellation did not relieve USF&G of the requirements of § 38.1-381.1. As USF&G's agent, Del Mar was obligated to comply with the statute.

The Court has considered the cases cited by counsel, including *Hayes v. Hartford Accident and Indemnity Co.*, 274 N.C. 73, 161 S.E.2d 552. While there are similarities in that case, it is distinguishable from

the instant matter for a number of reason. In the first place, the policy in question was issued under the assigned risk plan provided by the North Carolina statute; pursuant to which plan, the insured was assigned to the defendant insurance company. Of more significance, the premium finance plan was arranged through a discount company engaged in the business of financing insurance premiums through the assigned risk plan. There was no evidence of any agency or other relation between the discount company and the insurer. (Indeed, the Court specifically refers to the discount company as the insured's "agent" in giving notice of cancellation, a term from which USF&G shies in this case.) Finally, the evidence in that case showed that, before the accident, the insured had received notice of cancellation from the North Carolina Department of Motor Vehicles, which notice advised her that it would be unlawful to operate an uninsured motor vehicle.

More apposite to the instant case are the cases cited by the plaintiffs, *United States Fidelity & Guaranty Co. v. Stewart's Downtown Motors*, 336 F.2d 549 (9th Cir. 1964), and *Clark v. Employers Mutual Casualty Co.*, 90 F.2d 667 (8th Cir. 1937). In both of those cases, as in the case at bar, it was shown that the party seeking to effect cancellation was in reality the agent of the insurance company, and the failure to comply with the insurer's cancellation requirements made the cancellation ineffective. The *Clark* case is particularly close to the instant case in that the state statute provided for the method of cancellation by an insurance company, the insured had financed the premium through a premium finance plan, and said plan was offered by a partnership comprised of the managing officers of the insurance company. In concluding that the policy was not lawfully cancelled, the Court said at page 1209:

> We think the contract which authorizes the managing officers of the insurance company, in their discretion, to effect cancellation of their company's outstanding policy without registered mail notice . . . prescribed by the statute . . . amounts, in all practical intent, to the same thing as authorizing the insurance company itself to do so. Such a contract must be held void because the statute declares the policy of the state and prohibits the making of such insurance contracts, either by policies or by separate agreements. No other fair intendment can be drawn from the plain language used in the statute.

The Court further states at page 1211:

> The contract which confers on the managing officers power at will to cancel the insurance without statutory . . . notice . . . . must be held to contravene the statute. It violates the letter and the spirit.

It may well be, as suggested by USF&G, that the policy in question would not have been financed without the so-called power of attorney. But while the premium financing plan might have inured to the benefit of the insured, it also inured to USF&G's benefit. Indeed the plan is operated by its wholly-owned subsidiary, which imposes a finance charge for its service.

It may also be true, as suggested by USF&G, that to permit recovery in those cases would provide the insured free coverage for eight months. However, USF&G has little basis for complaint inasmuch as it or its agent Del Mar could have easily effected cancellation for failure of premium payment by following one of the methods prescribed under the Virginia statute.

The Court is of the opinion that in attempting to cancel the policy in question, Del Mar was acting as agent for USF&G. The so-called power of attorney contravened § 38.1-381.1 and therefore had no legal effect. The failure of Del Mar, acting as agent for USF&G, to comply with § 38.1-381.1, rendered the cancellation ineffective.