BRIDGE CREEK DRAINAGE DIST. *v.* WEBSTER.

(Division A. Nov. 20, 1933.)

[150 So. 915. No. 30843.]

Ely B. Mitchell, of Corinth, for appellant.

**C. L. Sumners,** of Corinth, for appellee.

Argued orally by **Ely B. Mitchell**, for appellant.

**McGowen, J.**, delivered the opinion of the court.

The appellee, Webster, receiver of the First National Bank of Corinth, Mississippi, brought an action at law against the appellant, Bridge Creek drainage district of Alcorn and Tippah counties, seeking to recover the amount of a note, executed by the appellant in favor of the First National Bank of Corinth, Mississippi.

The appellant sought to set off or counterclaim as against the note the sum of two hundred eighty-four dollars, alleged to have been paid out of the funds on deposit for appellant by appellee for bonds of the Bridge Creek swamp land drainage district, an entirely different entity, and that said funds had been so paid by said bank without authority, and without any sort of certificate from the commissioners of the appellant district over the protest

of its attorney; and the bank had refused to replace to its credit the amount of said payment on the demand of the appellant drainage district.

The evidence showed beyond dispute that two hundred eighty-four dollars of the appellant's funds had been paid out without authority and with no sort of written order or otherwise on the part of the depositor, for bonds and interest of an entirely different corporation in which the appellant had no interest. This payment of two hundred eighty-four dollars was made by the bank on December 21, 1928. There was evidence that the bank from time to time had sent statements of accounts between it and the appellant drainage district to the attorney for the drainage district. It is undisputed that, with reference to the set-off claim here, no voucher of any kind was sent to the drainage district by the bank nor were the bonds of the swamp land drainage district turned over to appellant district. So far as the records show, the appellee or its receiver is now in possession of these bonds, and the swamp land drainage district, from this record, appears to be solvent and able to pay its obligations upon their due date, as shown by the testimony of Gish.

The note sued on was dated March 23, 1931. The ledger sheets offered in evidence, beginning October 19, 1926, and ending November 13, 1931, show that no correction of this erroneous payment was made by the bank. It was agreed that the bank was the depository of the drainage district. The appellee moved the court for a peremptory instruction, which was granted as to the set-off claim. The note provided for a reasonable attorney's fee in case the same was placed with an attorney for collection; and one attorney testified that fifteen per cent. was a reasonable fee. The court peremptorily instructed the jury to return a verdict for the amount of the balance due on the note, disallowing the set-off, and allowing fifteen per cent. attorney's fee on the recovery. The appellant did not ask for a peremptory instruction.

On our view of the case, there is no doubt but that the

bank wrongfully and unlawfully paid out two hundred eighty-four dollars of the drainage district's funds and wrongfully charged the same to its deposit account after having been notified not to do so and after having been requested to restore the amount of the wrongful payment to the credit of the drainage district.

The court below evidently had the view that the drainage district was estopped, because the statements of account had been delivered to the drainage district at periods during the years intervening between the date of the wrongful payment and the closing of the doors of the bank, and seems to have applied the general rule as to relief between bank and depositor.

This drainage district was organized under chapter 39, Code 1906, subsequently chapter 196, Laws 1912. As originally organized, this drainage district was required to use the treasurer of the county as its treasurer. Section 1704, chapter 39, Code 1906, provides that the treasurer of the county shall be the treasurer of the drainage district, and section 1708 thereof provides that "it shall be the duty of the treasurer to keep proper books, to be furnished him by the commissioners, in which he shall keep an accurate account of all moneys received by him, and of all disbursements of the same. He shall pay out no money except upon the order of a majority of the commissioners, and shall carefully preserve on file all orders for the payment of money given him by the commissioners, and shall turn over all books, papers, vouchers, and moneys and other property belonging to said district, in his hands, as such treasurer, to his successor in office." Chapter 196, Laws 1912, amended certain sections, but did not undertake to amend either of these sections relative to the treasurer.

The Laws of 1912, chapter 194, section 13, contain the same provisions relative to depositories of all drainage districts. This section is brought forward in Hemingway's Codes of 1917 and 1927, and now appears as section 4357, Code 1930. The only possible theory upon

which the bank could be relieved of allowing its credit as a set-off to this note would be on the theory of estoppel. Under these several sections which have remained in force since the Code of 1906, there could be no estoppel under the facts of this case, and the statement of account rendered by the bank could not be used by it for the purpose of relieving itself of its plain duty to account for all the drainage district's moneys coming into its hands by operation of law, and the depository bank must pay out the money according to law. The above statute creates direct official duty and responsibility on the bank as a depository which is higher than the relation of bank and depositor. There is no evidence that any warrant was drawn, or authority given, upon which the bank could rely for this unlawful, erroneous appropriation of this money by it. The bank had a quasi official relation to the drainage district.

There is another reason why the bank cannot set up an estoppel in this case, and that is it does not appear that the bank was injured by the failure of the drainage district to make further complaint. According to the testimony of Gish and Mitchell, the bank paid this money and received therefor the bonds of the Bridge Creek swamp land district. It is not shown that these bonds are not still under the control and ownership, equitably if not legally, of the bank. It is shown that bonds of the swamp land drainage district were being paid subsequent to December 21, 1926. There appears no reason in this record why the bank as either the legal or equitable owner thereof could not recover from the swamp land drainage district the amount of the bonds and interest so erroneously paid.

In Hart v. Foundry & Machine Co., 72 Miss. 809, 17 So. 769, 774, the rule is thus stated: "Estoppel operates only in favor of one who, in reliance upon the act, representation, or silence of another, so changes his situation as that injury would result if the truth were shown." The bank was notified by the representative of the drainage

district that this payment out of the drainage district fund was unwarranted. It then knew it had a right to recover the amount thereof from the swamp land drainage district, and the fact, if it be true, it could not recover from Gish because of the statute of limitations, would not at all relieve the bank nor the swamp land drainage district from its obligation. There is no estoppel on the facts of this case of the drainage district to claim its own. The duty of the depository bank is clear that it should account for all the drainage district funds coming into his hands. It makes no effort so to do.

There is some complaint as to credits due from the deposits made in the bank for all drainage districts in that county, but the record does not disclose the amount, if any, it was due the appellant drainage district.

It was error for the court to peremptorily give an instruction that the bank was entitled to recover fifteen per cent. on the amount found to be due. The note provided for reasonable attorney's fees, and neither the jury nor the court was bound by the evidence of an attorney that fifteen per cent. was reasonable. It was persuasive, but not conclusive. See Capital Loan & Investment Co. v. Benson, 146 Miss. 607, 111 So. 575; Humphreys County v. Cashin, 128 Miss. 236, 90 So. 888.

The appellant was entitled to a peremptory instruction as to the set-off, but did not request it; therefore we cannot enter a judgment here.

Reversed and remanded.