JAMES B. BERRY SONS' COMPANY, INC., v. LLOYD L. OWEN, TRADING AS COTTON STATES OIL COMPANY.

(Division A. April 27, 1936.)

[167 So. 616. No. 32231.]

(Division B. Sept. 28, 1936.)

[169 So. 685. No. 32231.]

R. H. & J. H. Thompson, of Jackson, for appellant.

Harold Cox and A. B. Fulton, both of Jackson, for appellee.

Argued orally by **R. H. Thompson, Jr.**, for appellant, and by **Harold Cox**, for appellee.

### On Motion.

**Per Curiam:**—The motion to dismiss this appeal will be sustained unless the appellant executes and files with the clerk of this court a new appeal bond, approved by the clerk of the court below, within thirty days hereafter.

The motion to strike the stenographer's notes from the record will be overruled.

The case will be continued until the next term of this court.

So ordered.

### On Merits.

**Ethridge, P. J.**, delivered the opinion of the court.

The appellant was plaintiff in the court below, and brought suit against the appellee for three hundred for-

ty-four dollars and ninety-four cents with interest, the balance due upon a shipment of oil amounting to eight hundred forty-four dollars and ninety-four cents upon which account appellee had, at various times, paid the sum of five hundred dollars.

Appellee pleaded the general issue, giving notice thereunder that he would prove that on or about July 1, 1932, he ordered from appellant three thousand and fourteen gallons of lubricating oil, by sample of a serviceable quality and color, for which appellee was to pay the sum of three hundred thirty-four dollars and thirty-eight cents, and on which amount appellee did pay the sum of one hundred sixty-five dollars and ninety-eight cents together with freight charges amounting to fifty-three dollars and ninety cents; that appellant shipped said oil to appellee from the plant of its subsidiary, the Berry Asphalt Company of Waterloo, Ark., and that at the first opportunity for an inspection, appellee ascertained that the oil was not of the color and quality ordered, and was inferior and unsalable; that appellee notified appellant that he would not accept said shipment, called the first shipment, and appellant directed appellee to unload the shipment, which he did, and sell the oil for the best possible price; that appellee later learned that, and so notified appellant, said oil was not salable, and appellant voluntarily agreed to and did ship to appellee six thousand and thirty-five gallons of Sinclair Lubricating oil solely for the purpose of blending with said first shipment to make it marketable, said six thousand and thirty-five gallons being called the second shipment, it being the item sued on; that said oil would not blend with the first shipment, and appellee was not thereafter able to sell said first shipment and now has on hand, approximately, two hundred fifty gallons of said first shipment which is worthless, and that appellee paid appellant the sum of five hundred dollars cash for said second shipment of oil. It was further alleged that appellee would prove on a trial of the case that his oil

trade in the territory was practically destroyed by reason of the inferior quality of the first shipment of oil sold to him by the appellant, and that appellee was forced to make many adjustments and settlements with customers damaged by the use of the inferior oil, and was damaged in the actual sum of four hundred sixty-five dollars and ninety-six cents, and should be entitled to recoup this loss from the appellant.

From the evidence it would seem that the first shipment of oil referred to was purchased from the Berry Asphalt Company by R. S. Gibbs, a broker for the appellee, and that prior to this purchase, Gibbs and Owens had contemplated forming a partnership for the sale of motor oil in Jackson, Miss., and that appellee went to Chicago, where the appellant, the James B. Berry Sons' Company, Inc., and the Berry Asphalt Company had offices, and discussed the purchase of oil with president of the Berry Asphalt Company, who was also western manager of the James B. Berry Sons' Company, Inc. After the partnership arrangement failed to materialize, Gibbs opened an office in New Orleans, La., and appellee applied to him to purchase the first shipment of oil referred to in the pleadings. This first shipment was billed out under an invoice and bill of lading from the Berry Asphalt Company consigned to the appellee at Jackson, Miss., was accepted by him, and one-half of the purchase price, plus freight thereon, was paid.

On July 16, 1932, Gibbs wrote upon stationery of the Berry Asphalt Company, from Little Rock, Ark., to appellee, the following letter:

"The carload of oil will not be shipped today or tomorrow. I will probably be at the refinery on Monday, and at that time will make every effort to see that the oil is properly blended and shipped to you promptly. There has been a delay in securing a small tank car, and if this is the only thing that is holding the shipment up now, I am going to ship you 1000 gals. by motor truck just as soon as the oil can be properly blended. I

am very sorry this delay has occurred, but it seems inevitable in the production of a new product. Trusting you had a good week in your gasoline and kerosene sales, and with all best wishes, I am,

"Yours very truly, R. S. Gibbs"

It appears that the first shipment of oil not being satisfactory to appellee's trade, he complained to Miller in Chicago, president of the Berry Asphalt Company, and western sales manager of Berry Sons' Company, Inc., and the arrangements not being satisfactory, appellee applied to Gibbs to assist him, who suggested an order of a superior oil known as Pennsylvania oil for the purpose of blending it with the first shipment to make it salable; that Gibbs approached Miller about it, who declined to ship Pennsylvania oil on the ground that it was too expensive, and that Gibbs then suggested Sinclair oil, and that appellee placed an order with Gibbs to procure such oil from the James B. Berry Sons' Company, who made the shipment here sued on. Gibbs was not introduced as a witness. It also appears that both the James B. Berry Sons' Company and the Berry Asphalt Company had offices in the same building and used the same office facilities for the purpose of economy, but that they were separate corporations, doing a separate business, and that the entire stock of both corporations was owned by a Pennsylvania corporation. The Berry Asphalt Company, as stated, had a refinery at Waterloo, Ark., for the processing of oils, and from this company and this point the first shipment of oil referred to was made, being billed by the Berry Asphalt Company to Owens, the appellee, who paid one-half of the invoice, plus the freight, for such oil, and after the difficulty with reference thereto arose, he negotiated with the Berry Asphalt Company with reference thereto, and they adjusted the matter by charging it to profit and loss.

The evidence shows that the James B. Berry Sons' Company, Inc., shipped to Owens, the appellee, the second shipment of oil, he received same, and paid five hun-

dred dollars on the account. This purchase was made through Gibbs, a broker, who had no connection with the James B. Berry Sons' Company, Inc., other than he was allowed a commission on shipments made by him for customers.

There is no direct testimony from which it can be inferred that there was any connection between the James B. Berry Sons' Company, Inc., and the Berry Asphalt Company, but the positive testimony for the appellant is that there was no such connection. We do not think it can be inferred that from the fact that the two corporations occupied the same offices, or had largely the same directors and officers, would make the two a single corporation, nor is there, in our judgment, anything to infer that the Berry Asphalt Company was or is a subsidiary of the James B. Berry Sons' Company, Inc. The positive proof is to the contrary, and though it is suggested in appellee's testimony that he understood he was dealing with the James B. Berry Sons' Company, Inc., in placing his order through his broker, Gibbs, and that Gibbs was an agent for James B. Berry Sons' Company, Inc., there is insufficient proof to establish such agency. Appellee's positive testimony is that he placed the order with Gibbs and did not direct him where to purchase the oil. There is nothing in the evidence to show that it was not permissible, under the Pennsylvania law, for a corporation to own the stock of two corporations; hence it was lawful for these corporations to be owned, one hundred per cent., by a Pennsylvania corporation. Therefore, in the absence of any showing to the contrary, we must presume that the two corporations in the case at bar were legal ones, each having a separate legal existence. See Werner Sawmill Co. v. Northcutt et al., 161 Miss. 441, 134 So. 156, where two corporations were discussed, and it was held that two corporations doing business, under the circumstances there disclosed, were separate entities.

Furthermore, we do not understand that the James B.

Berry Sons' Company, Inc., in any manner procured the blending of the two oils, or was responsible for the unsuccessful blending. All that appears is that a representative was sent either by the Berry Asphalt Company, or the James B. Berry Sons' Company, Inc., to investigate the complaint, and that the Berry Asphalt Company abated its claim to the extent of one hundred sixty-seven dollars and fifteen cents, charging it to profit and loss.

We think the evidence of appellee, Owens, taken as a whole, fails to make any defense against the claim of the appellant, and that, consequently, the trial judge should have directed a verdict for the appellant.

It appears from counsel's briefs that the county court directed a verdict for the plaintiff there, and that this was reversed by the circuit court, and the case was tried de novo.

It follows from what we have said that the trial court should have directed a verdict for the appellant, and that, consequently, the judgment will be reversed and judgment rendered here for the appellant for the amount claimed.

Reversed and rendered.