Murdock Acceptance Corporation *v.* Adcox

No. 42148 March 19, 1962 138 So. 2d 890

*Watkins & Eager,* Jackson, for appellant.

*R. C. Russell,* Magee; *W. W. Dent,* Collins, for appellee.

Kyle, J.

The appellant, Murdock Acceptance Corporation, a Tennessee Corporation authorized to do business in the State of Mississippi, and having a branch office in Jackson, Mississippi, filed two replevin suits in the Circuit

Court of Simpson County, seeking to recover possession of one 1958 six-cylinder Ford one-half ton pickup truck valued at $1978, and one 1958 eight-cylinder Ford two-ton truck and cab valued at $2544. The affidavits in replevin were filed on May 31, 1960, and writs of replevin were issued on the same day and placed in the hands of the sheriff for execution. The sheriff's return shows that he took possession of the two trucks on June 1, 1960. The trucks were valued by the sheriff in his returns at the amounts stated in the affidavits in replevin. On June 13, 1960, the plaintiff executed replevin bonds for the two trucks, and the trucks were delivered to the plaintiff. The plaintiff filed its declarations in replevin on September 12, 1960, in Cause No. 5336 and Cause No. 5337, as shown on the docket of the circuit court.

In its declaration in Cause No. 5336, the plaintiff alleged that, on or about July 19, 1958, Dickson Motor Company entered into a conditional sale contract with the defendant Ida Adcox for the sale by Dickson Motor Company, and the purchase by the defendant, Ida Adcox, of the above mentioned one-half ton pickup truck, title being retained in the seller to secure the payment of the unpaid balance of the purchase price, which was to be paid in 23 monthly installments of $86 each; that Dickson Motor Company, for valued received, assigned the contract, together with the retained title and all rights thereunder to the plaintiff; that the defendant had failed and refused to pay the installments falling due since August 21, 1959; that the plaintiff had demanded possession of said vehicle from the defendant and the defendant had refused to deliver up possession; and that the plaintiff was entitled to immediate possession of said vehicle. The plaintiff alleged that the unpaid balance due and owing on the pickup truck was $1113.12. The plaintiff attached to its declaration the original conditional sale contract.

The declaration in Cause No. 5337 alleged that, on January 15, 1958, Dickson Motor Company entered into a conditional sale contract with the defendant Ida Adcox for the sale by Dickson Motor Company and the purchase by the defendant of the above mentioned two-ton truck and cab; that under the terms of said conditional sale contract title to the vehicle was retained in the seller to secure the payment of the unpaid balance of the purchase price, which was to be paid in 24 monthly installments of $106 each; that Dickson Motor Company for value received assigned said contract to the plaintiff; that the defendant had failed and refused to pay the installments falling due since August 21, 1959; that the plaintiff had demanded possession of said vehicle from the defendant and the defendant had refused to deliver up possession; and that the plaintiff was entitled to the immediate possession of said vehicle. The declaration also alleged that the unpaid balance due on the two-ton truck and cab was $954. The original of said contract was attached as an exhibit to the declaration.

The defendant filed her answer to each of the declarations on December 5, 1960, and in her answer denied that she was legally indebteded to the plaintiff in the amount sued for. The defendant averred in her answer in each case that at the time she purchased the truck in question she was engaged in various logging enterprises and that she took out an insurance policy to protect her against bodily injury or sickness during the life of the policy, a copy of said policy being attached to her answer; that said policy was in full force and effect; that the plaintiff was totally disabled to perform any of her duties incident to her business; and "that under the terms of the policy she was not due to pay anything on said truck * * * during her total illness;" and that the plaintiff was fully aware of that fact when it instituted its suit. The defendant also alleged in her answer that the defendant had suffered irreparable loss as a result of the plain-

tiff's seizure of the truck for which she was entitled to recover damages.

On March 8, 1961, the defendant filed a supplemental answer and notice of claim for damages in each of the two cases, in which she stated that she was not guilty of any of the things laid to her charge in the plaintiff's declaration, and she did not owe the debt claimed against her by the plaintiff, because the plaintiff did not owe any of the indebtedness sued for, and the suits should be dismissed. The defendant also gave notice that she would attempt to prove, when the case was tried, that the insurance policy referred to in the answer theretofore filed was more than sufficient to pay the monthly installments of the purchase price of the truck which had matured during her illness. On March 20, 1961, the defendant filed a second supplemental answer in each of the two cases in which she alleged that during the negotiations leading up to the purchase of each of the trucks, the said Joe Dickson advised her that the Murdock Acceptance Corporation handled all of his credit business, and if she desired to purchase the truck on a conditional sale contract basis he would sell her the truck on that basis and assign the contract to Murdock Acceptance Corporation and the payments under the contract would be made directly to Murdock; that Murdock, however, would not accept such assignment unless the defendant took out an indemnifying Time Finance Policy with the Continental American Life Insurance Company by the terms of which the insurance company would be required to pay the deferred payments of the purchase price of the vehicle described in the conditional sale contract in the event the defendant became physically disabled, as defined in the policy.

The cases were called for trial at the regular March 1961 term of the court; and by agreement of counsel the two cases were consolidated for trial and were tried together.

William J. King, Loan Manager of the Murdock Acceptance Corporation, testified that Murdock Acceptance Corporation purchased the conditional sale contracts from Dickson Motor Company of Mount Olive; that the contract on the 1958 one-half ton pickup truck was purchased by Murdock Acceptance Corporation in July 1958; and that the contract on the two-ton truck was purchased in January 1958; that the contract on the one-half ton truck called for 23 monthly payments of $86 each, and the first payment becoming due August 16, 1958; that the contract on the two-ton truck called for 24 monthly payments of $106 each, the first payment becoming due February 22, 1958; that the last payment made by Mrs. Ida Adcox on each of the trucks was made on July 31, 1959; and that no payments had been made since that time. King stated that he notified Mrs. Adcox that the payments were not being made and that Murdocked wanted the balance paid or possession of the truck; that Mrs. Adcox refused to release the trucks to Murdock and refused to make any more payments. King was asked whether the buyer had taken out insurance policies to cover the unpaid installments in case of death or in case of disability of the buyer. His answer was that such policies had been taken out by the buyer, but the policies had not been taken out with Murdock Acceptance Corporation; that Murdock was not an insurance company. King was asked whether it was mandatory that a person buying an automobile or truck which was to be financed by Murdock Acceptance Corporation take out such insurance. His answer was, that it was not mandatory, and it was not required in this case. King stated that the unpaid balance on the pickup truck was $1113 at the time the writ of replevin was issued, and that the unpaid balance on the two-ton truck was $954. King stated that payments under a conditional sale contract were not suspended upon notice of sickness of the buyer where the buyer had taken out

insurance; that Murdock looked to the buyer as the person liable for the payments.

On cross-examination King was questioned at length by the defendant's attorney concerning the relationship which existed between Murdock Acceptance Corporation and Continental American Life Insurance Company. King stated that the two corporations were separate corporations, although they appeared to have the same president. King was also questioned about a stamped assignment, which appeared on the back of each of the conditional sale contracts, by Murdock Acceptance Corporation to Harris Trust and Savings Bank. He stated that Murdock Acceptance Corporation borrowed money from the Harris Trust and Savings Bank from time to time for use in its business, and the assignments were made as security for such loans; that Murdock had a right, however, to continue to receive payments on the accounts represented by the conditional sale contracts and to repossess the property described therein. The two insurance policies issued to the defendant by Continental American Life Insurance Company were offered in evidence by the defendant as exhibits to King's testimony.

Except for dates and amounts the two policies were identical. Each of the policies provided indemnity in case of death and for loss of time effected through accidental means or sickness, to the extent therein provided. One policy was dated January 15, 1958 and ran 24 months with an original death benefit of $2,544. It contained accident and health benefits providing for $106 per month for total and permanent disability. The other policy was dated July 19, 1958, and ran for 24 months with an original life benefit of $2,059 and total and permanent disability benefits of $86 per month. Both contracts provided that "this policy shall constitute the entire contract between the parties." Also, "no alteration of this policy * * * shall be valid unless endorsed

hereon and signed by an Officer of the Company. No agent is authorized to modify, alter or enlarge this policy or to bind the company by any promise or undertaking.''

The accident and health provisions of both policies in the fixed amount as above set out, became payable after ''bodily injury sustained during the term of this policy and effected solely through accidental means, and against loss of time resulting directly and independently of all other causes from sickness contracted on or after the fifteenth day from the commencing date of this policy.'' Such benefits were payable ''if such sickness * * * shall require the insured to be regularly treated by a licensed physician other than the insured, and shall wholly and continuously disable the insured so as necessarily to prevent him from performing any and every duty pertaining to his occupation.'' Under such circumstances the company agreed to pay benefits to the insured and to the insured only. The first beneficiary was listed as Murdock Acceptance Corporation. However, the policies both provided:

''Indemnity for loss of life of the insured is payable to the beneficiary if surviving the insured, and otherwise to the Estate of the insured. *All other indemnities of this policy are payable to the insured.''*

The appellee's proof consisted mainly of testimony relating to her total disability since October 1, 1958, and her claim that the plaintiff should have collected the unpaid balance of the purchase price of the two trucks from the insurance company. The appellee testified that she had sustained a back injury on or about October 1, 1958, when she was running a fruit stand at Canton, and that she had been unable to work since that time. She stated that she purchased the two trucks described in the affidavits in replevin from Joe Dickson and signed the conditional sale contracts, and that she took out insurance with the Continental American Insurance Company. She stated that she could not have bought the

truck on credit without taking out the insurance, and that if her health had "stayed up" she would have paid for the trucks. She stated that she notified Murdock and the insurance company when she got sick, and that she told them she was not able to make the payments. She stated that she was using the trucks for hauling pulpwood and was making at least $250 a month above expenses, when the writs of replevin were issued, and that she was not able to execute a $10,000 bond to retain possession of the trucks.

Dr. E. D. Kemp testified that Mrs. Adcox came to see him at his office on July 10, 1959; that she gave him a history of an injury sustained in August or September 1958; and that she stated to him that she had not been able to work since that time and had been under treatment of other doctors. The doctor stated that he examined Mrs. Adcox and told her that he could give her only temporary relief, and that he later sent her to a doctor in Jackson, whose diagnosis was an arthritic sclerosis of the spine and a moderate degeneration of the third and fourth lumbar vertebrae. Dr. Kemp stated that he did not know whether Mrs. Adcox' condition was growing progressively worse or not; but he did not think that she was able to work. He stated that he filled out her application for disability payments and sent it to the insurance company. Several lay witnesses testified that they were personally acquainted with Mrs. Adcox, and that in their opinion she had been unable to work since she sustained her back injury.

The jury returned a verdict for the defendant against Murdock Acceptance Corporation and the surety on the replevin bond, that they restore the trucks to the defendant or pay the value thereof, which was fixed at $4522, and that they also pay to the defendant $1800 damages for wrongfully suing out the writs of replevin and the wrongful detention of the trucks and $500 attorneys' fees. A judgment was thereupon entered in

favor of the defendant in accordance with the jury's findings. From that judgment the plaintiff has prosecuted this appeal.

The appellant's attorneys have assigned and argued several points as grounds for reversal of the judgment of the lower court. But in view of the fact that the judgment must be reversed on account of errors in the instructions and the refusal of the court to sustain the appellant's motion for a new trial, it will not be necessary that we consider all of the other errors assigned and argued.

The evidence in the record shows without contradiction that the last payment made by the appellee on each of the trucks was made on July 31, 1959, and that at the time of the trial on March 21, 1961, there still remained unpaid on the purchase price of the two-ton truck the sum of $954, and on the purchase price of the pickup truck, $1113. The appellee did not contend during the trial, and her attorneys do not contend on this appeal, that the balance alleged to be due when the replevin writs were issued had been actually paid. It was the appellee's contention that the Continental American Life Insurance Company, which was not a party to the conditional sale contracts or the replevin actions, should have paid to Murdock Acceptance Corporation the amounts of the unpaid installments which became due after the appellee became physically disabled in October 1958. The appellee also contended during the trial that, since J. E. Murdock was president of Murdock Acceptance Corporation and was also president of Continental American Life Insurance Company, Murdock Acceptance Corporation had a right to collect, and it was its duty to collect, the disability benefits payable to her under the policies and apply the same to the payment of the unpaid installments of the purchase price of the trucks.

The court in granting the instructions requested by the appellee adopted the theory of defense put forward

by the appellee in her answers to the replevin suits and in her testimony during the trial, and in so doing the court committed reversible error.

■■■ In the instruction which appears on page 151 of the record, the court instructed the jury for the defendant that it might take into consideration the fact that J. E. Murdock was president of both Murdock Acceptance Corporation and Continental American Life Insurance Company, that "the sole purpose of the insurance policy was to protect the purchaser of the truck as well as any other person interested in the payment thereof, and that Murdock had the right to collect this insurance in person if he so desired." The court erred in granting that instruction for the reason that, so far as this record shows, Murdock Acceptance Corporation and Continental American Life Insurance Company were separate entities — separate artificial persons. Murdock Acceptance Corporation was a Tennessee Corporation authorized to do business in Mississippi and licensed as a finance company. Continental American Life Insurance Company, on the other hand, was a Mississippi Corporation, with its domicile in the City of Jackson, Mississippi, and engaged in the business of writing life, accident and health insurance. The types of business in which the two corporations were engaged were entirely different.

■■■ Ordinarily two or more corporations are separate and distinct entities although the same individuals are the incorporators of, or own stock, in the several corporations, and although such corporations may have the same persons as officers. 18 C.J.S. 374, Corporations, par. 5j; Adler v. Interstate Truck and Banking Co., 166 Miss. 215, 146 So. 107, 87 A.L.R. 347; Illinois Central R. R. Co. v. Mississippi Cottonseed Products Company, 166 Miss. 579, 148 So. 371; James B. Berry Sons' Company, Inc., v. Owen, 176 Miss. 562, 167 So. 616, 169 So. 685.

In the case of James B. Berry Sons' Company, Inc., v. Owen, supra, the Court held that proof that the corporation which allegedly sold inferior oil to the buyer and the corporation which sold oil used by the buyer to blend with inferior oil to make oil salable occupied the same offices, had largely the same directors and officers, and that all of the stock of both corporations was owned by a foreign corporation was not sufficient to show that the corporations were a single entity so as to permit the buyer to recoup losses sustained by reason of the purchase of inferior oil when sued by the corporation selling oil used for blending. The Court in its opinion in that case said: "There is nothing in the evidence to show that it was not permissible, under the Pennsylvania law, for a corporation to own the stock of two corporations; hence it was lawful for these corporations to be owned, one hundred per cent, by a Pennsylvania corporation. Therefore, in the absence of any showing to the contrary, we must presume that the two corporations in the case at bar were legal ones, each having a separate legal existence."

 There is no evidence in the record in this case to show that it was not permissible under the laws of the State of Tennessee for Murdock Acceptance Corporation to own the stock of another corporation. A corporation may retain its separate identity where its stock is owned partly or entirely by another corporation, as well as where it is owned by natural persons. It was neither alleged nor proved in this case that Murdock Acceptance Corporation or Continental American Insurance Company was organized for an illegitimate purpose, or that either of the corporations was controlled in such manner as to make it merely an instrumentality or an adjunct of the other, or that the corporate existence of either of the two corporations was a mere sham, or that the corporate cloak has been utilized as a subterfuge to defeat public convenience or to perpetrate

fraud. It was not a matter of importance in this case that Murdock may have been president of both corporations; and it is not true that Murdock Acceptance Corporation had a right to collect the accident and sickness indemnities payable under the policies issued by Continental American Life Insurance Company in this case. The policies themselves expressly provided that only the indemnity for loss of life should be payable to Murdock Acceptance Corporation, and that all other indemnities provided for in the policies should be payable to the insured.

 The court also erred in granting the defendant's instruction which appears on page 153 of the record in which the court instructed the jury that if they should find for the defendant, Mrs. Ida Adcox, their verdict might be, Mrs. Adcox was entitled to both trucks involved in this suit, or their value, and for reasonable rental thereon, and that if the jury believed that the insurance paid the balance on the trucks and made an overpayment, the defendant would be entitled to all the insurance above the amount of the indebtedness and a reasonable attorney's fee.

 There is no evidence in the record to show that any insurance had been paid to Murdock Acceptance Corporation, or that the accident and sickness indemnity provided for in the policy could have been paid to Murdock Acceptance Corporation, if proof had been made that such payments were due under the terms of the policy. The accident and sickness indemnities provided for in the policies were payable according to the provisions of the policies to the insured, and not Murdock Acceptance Corporation. "Benefits payable under a policy on account of disability are for the benefit of insured, and are generally payable to him, and the death beneficiary is not entitled thereto." 46 C.J.S. 38, Insurance, Sec. 1155; Aetna Life Insurance Co. v. McCree, 174 Miss. 242, 164 So. 223; Conlon v. Northern Life

Ins. Co., 108 Mont. 473, 92 P. 2d 284; New York Life Ins. Co. v. Kincaid, 136 Fla. 120, 186 So. 675; Bailey v. Bankers Health & Life Ins. Co., 69 Ga. App. 71, 24 S. E. 2d 740; Foster v. North Carolina Mutual Life Insurance Company, 150 S. C. 482, 148 S. E. 656. Murdock Acceptance Corporation, as stated above, was beneficiary under the policies offered in evidence in this case only in the event of loss of life of the insured.

██ The court also erred in granting the appellee's instruction which appears on page 155 of the record. In that instruction the court instructed the jury that, if they believed from the testimony in the case that Mrs. Adcox was forced to take out an insurance policy at the time she signed the conditional sale contracts for the purchase of each of the trucks and pay the total amount of the premium thereon during the life of the policy; that Mrs. Adcox had become totally disabled thereafter to carry on her duties; and that the insurance that she had provided for and that the plaintiff and its associates held after the premiums had been paid, fully paid the contract price of the truck and above the contract price, then the trucks and each of them had been fully paid for, and a writ of replevin would not lie for either truck; and if the jury believed the foregoing facts it would be their sworn duty to find for the defendant.

It can be readily seen that the instruction last above mentioned was erroneous in that the instruction was based upon the theory that the accident and sickness indemnities payable under the policies were payable to Murdock Acceptance Corporation, when, as a matter of fact, the policies themselves expressly provided that such indemnities should be payable to the insured, and there is no evidence in the record to justify a finding by the jury that Murdock Acceptance Corporation had received payments of any indemnities under the policies, or that the trucks "had been fully paid for."

██ █ The appellant in our opinion had a right to prosecute the replevin actions in its own name, notwithstanding the fact that a stamped assignment of the conditional sale contract to Harris Trust and Savings Bank, its successors and assigns, appeared on the back of each of the contracts. The stamped assignment, we think, was sufficiently explained by the appellant's loan manager, William J. King, who testified that the stamped assignment to Harris Trust and Savings Bank was, as a matter of fact, purely as collateral security for a loan, that the assignments had been stamped on the back of each of the sale contracts to enable Murdock Acceptance Corporation to borrow money from Harris Trust and Savings Bank, and that Murdock Acceptance Corporation continued to exercise the right to receive payments on the contracts and to repossess the property in case of default in such payments.

Section 1448, Code of 1942, provides that in case of a transfer or assignment of any interest in any chose in action before or after suit brought, the action may be begun, prosecuted and continued in the name of the original party, or the court may allow the person to whom the transfer or assignment of such interest has been made, upon his application therefor, to be substituted as a party plaintiff in said action.

In 6 C.J.S., 1170, Assignments, Sec. 122, the textwriter says: "A statute which, however, merely permits an action by the assignee will not preclude an action by the assignor as at common law and a mandatory statute as to actions by the assignee of particular obligations will not preclude an action by the assignor in the case of assignment of other obligations. Further, the assignor may sue where he retains a beneficial interest in the chose in action assigned, as where the assignment is for security * * *." See also cases cited, ibid., p. 1170, Note 93; also Thayer v. Yakima Tire Service Co., Wash., 199 P. 234; Posey v. Frost Motor Co., Ga. 65 S. E. 2d

427; Louk v. Patten, Idaho, 73 P. 2d 949; McPherson v. Acme Lbr. Co., 70 Miss. 649, 12 So. 857; American Life Insurance Co., v. Walker, 208 Miss. 1, 43 So. 2d 657; Toler v. Owens, 231 Miss. 753, 97 So. 2d 728.

In Thayer v. Yakima Tire Service Company, supra, the Court held that a seller under a conditional sale contract who had assigned his contract to a bank in effect as collateral security for a loan by the bank to him and who paid to the bank the installments on which the buyer defaulted had authority to forfeit the contract for the buyer's default.

In the case of Posey v. Frost Motor Company, supra, the Court held that even in a state where an action for replevin or trover must be based on title, where the plaintiff had actual possession of the conditional sales contract which had been assigned for collateral, the plaintiff-seller could bring an action in replevin or trover. The Court in its opinion in that case said: "While the instrument here involved is not a negotiable instrument, but merely a chose in action, we think that a solution to the question may be had by reference to a rule originating in the law of negotiable instruments to-wit: 'The payee of a promissory note, in possession of the same, is presumed to own it, although his endorsement thereon, in full or in blank, may stand uncancelled. He may sue upon such note, and his title to the same cannot be inquired into * * *.' State of Georgia v. Industrial Acceptance Corp., 37 Ga. App. 253 (1), 139 S. E. 577 * * *. In Globe & Rutgers Fire Ins. Co. v. Jewell-Loudermilk Co., 36 Ga. App. 538 (8), 137 S. E. 286, 287, it was held that 'An assignor of a chose in action, who has assigned the legal title thereto to another as security for a debt, has such an interest therein that he may maintain a suit thereon in his own name * * *'."

It can be readily seen from what has been stated above that the verdict of the jury in this case was contrary to the law and the evidence; and for that reason, as well

as for errors in the instructions, the appellant's motion for a new trial should have been sustained.

█ █ The appellant's attorneys have asked in their brief that the judgment of the lower court be reversed and that judgment be entered here for the appellant. But the appellant did not ask for a peremptory instruction at the close of all of the evidence. Consequently we cannot render judgment here for the appellant. Brenard Mfg. Co. v. Brown, 152 Miss. 319, 120 So. 182; Bridge Creek Drainage Dist. v. Webster, 168 Miss. 115, 150 So. 915; Harris v. Griffin, 226 Miss. 74, 83 So. 2d 765. The judgment of the lower court will therefore be reversed and the cause remanded.

█ █ After the record was filed in this Court the appellee filed a motion to dismiss the appeal on the grounds, first, that the replevin suits filed by the appellant were not filed in good faith; and second, that if the claims of the appellant should be sustained a palpable fraud would be perpetrated upon the appellee. Other grounds were also assigned and argued in support of the motion. The motion was taken under advisement for consideration by the court when the case was considered upon its merits. We find no evidence in the record to support the appellee's charge of a lack of good faith on the part of the appellant in filing the replevin actions, and we find no basis for the charge of fraud in the prosecution of the appeal. There is no merit in any of the other points stated in the motion. The motion to dismiss the appeal is therefore overruled; and for the reasons stated above the judgment of the lower court is reversed and the cause remanded.

Reversed and remanded.

*McGehee, C.J., and Arrington, Ethridge and Rodgers, JJ.,* concur.