PROVIDENCE WASHINGTON INSURANCE Co., Respondent, v. SECUR-
ITY MUTUAL INSURANCE COMPANY, Appellant; ALAN CUBBIN
et al., Respondents, et al., Defendants.

Second Department, December 31, 1973.

*Leo E. Berson* (*William F. McNulty* and *Anthony J. McNulty*
of counsel), for appellant.

*Evans, Orr, Pacelli, Norton & Laffan* (*Walter G. Evans* of
counsel), for Providence Washington Insurance Co., respondent.

SHAPIRO, J.  In this action to declare the rights of the various parties with respect to a policy of automobile liability insurance issued by defendant Security Mutual Insurance Company (Security) to defendant Rosemary Leibold covering her automobile, Security appeals from a judgment which held it concurrently liable with the plaintiff, Providence Washington Insurance Co. (Providence), which had also issued a policy of automobile liability insurance to Mrs. Leibold covering the same vehicle, with respect to damages sustained by other parties in an automobile accident, hereafter described, which occurred on August 16, 1968.

The facts are that on February 23, 1968 Security issued to Mrs. Leibold and her husband, Charles Leibold, a binder for a policy of automobile liability insurance covering a 1967 Ford Mustang owned by Mrs. Leibold.  Sometime in June, 1968, Security informed the broker through whom Mrs. Leibold had obtained this insurance that it would not be interested in continuing the property damage coverage of her policy.  The broker so notified her.  Thereafter the broker was informed by Mr. Leibold that he and his wife were finished with him and were " going to get another broker and another carrier."  On July 11, 1968 Providence issued its automobile liability insurance policy to Mrs. Leibold through a new broker she was using, named Krasnow.

On August 16, 1968 this automobile, while being operated by Mrs. Leibold's son, defendant James Leibold, with her consent, was in a collision with a Volkswagen owned by defendant Robert J. Patrick.  This resulted in separate actions against Mrs. Leibold and her son by defendant Alan Cubbin, a passenger in the Patrick vehicle at the time of the accident, and his wife, defendant Carol Cubbin, and by Mr. Patrick and his wife, defendant Carol Patrick.  After the accident, Mrs. Leibold notified her new broker, Mr. Krasnow, of the accident and he in turn forwarded this information to Providence.  She did not notify her former broker or Security of the accident and there is no contention that she was in any way responsible for the notice ultimately given Security of the accident and the suits for damages against her and her son arising therefrom.  Such notice first came to Security in October, 1968, when an adjuster assigned by Providence to deal with Mrs. Leibold's property damage loss learned that Security had previously issued a policy to Mrs. Leibold and then spoke to an employee of Security who was in charge of the department which had underwritten Mrs. Leibold's policy.  He then furnished that employee with

the date of the accident, the names of the drivers and of Security's insured, and the vehicles involved. Later, the automobile claims supervisor of Security received from the claims service bureau, which had been assigned by Providence to deal with the liability aspects of the accident, a letter dated November 21, 1968, which advised Security that it had issued a policy of insurance to Mrs. Leibold, specifying its number, for the period February 23, 1968 to February 23, 1969. The letter also placed Security on notice that it was Providence's position that, at the time of the accident, it had concurrent coverage of the Leibold automobile with Providence.

By letter dated January 22, 1969 Security notified Mrs. Leibold and her husband that it had been " recently advised " of the August 16, 1968 accident involving a vehicle owned by them " and insured by the Provident Washington Insurance Company " and that it disclaimed coverage under its, Security's, policy on the ground that the insured had failed to give it notice " as soon as practicable" of the circumstances of the loss or to tender to Security " suit papers immediately upon receipt of them," as required by the policy. Thereafter, on or about March 20, 1969, Security brought suit against Mrs. Leibold and her husband for $992, representing the earned premium owing to it on the policy which it had issued to the Leibolds, the earned premium claim being for the period February 23, 1968 to January 10, 1969, the latter date having been shown on an invoice as the " cancellation date " for the policy. In response to that suit, the attorney representing the Leibolds therein responded in a letter dated April 1, 1969, in which he said: " Furthermore, from our standpoint my clients have never received a policy of insurance from Security and advised Mr. Harry Krantz who was supposedly employed by your agent Warren H. Goodwin of 66 Mineola Avenue, Roslyn Heights, New York, that all coverage written from Mr. Krantz should in fact be cancelled effective July 11, 1968.

" It is noted that on July 11, 1968 my clients became insured with Providence-Washington Insurance Company under Policy ACF 764785 which expires July 11, 1969, and said company has picked up the burden relative to any liability or responsibility as the result of the accident of August 16, 1968." The same letter also contained a paragraph reading:

" Our client naturally would not report the accident of August 16, 1968 to Security due to the fact that they had advised your agent that all policies through that agency should be cancelled as of July 11, 1968." Ultimately that suit was settled by the pay-

ment by the Leibolds to Security of the sum of $494, the actual earned premium for Security's coverage of them for the period from February 23, 1968 to July 11, 1968, the day on which they, through their attorney, contended the Security policy was canceled *by them.*

We have set forth at length the facts concerning the Leibolds' dealings with Security because they clearly establish that Mrs. Leibold canceled her policy with Security effective as of the date she obtained a replacement policy from a new insurer. The totality of her conduct, from her husband's statement to the former broker in June, 1968 that they were finished with him and were going to get another broker and another carrier; the obtaining of replacement coverage from Providence; her nonpayment of the premium due for the Security policy; her giving notice of the accident of August 16, 1968 only to her new broker; the statements made in her behalf by her attorney in response to Security's suit for claimed earned premium due on the policy, and her settlement of that suit by payment of the earned premium on the Security policy for the period from February 23, 1968 to July 11, 1968, all compel the conclusion that the Leibolds' policy with Security was canceled as of the latter date.

The answer of Security asserts as a defense the cancellation of its policy by the Leibolds on July 11, 1968. The testimony in this record does not show that Security ever received notice of this cancellation. The record also makes it clear that Security first learned of the accident when it was informed of it by Providence's investigator. A check by it then revealed that the premium for the policy had not been paid. Since the agency through which it had issued its policy to the Leibolds had apparently failed to notify it of the Leibolds' intention to cancel, its first reaction was to disclaim because of the latter's failure to give it prompt notice of the accident and to seek to recover the earned premium due it. Even in this latter respect, its action was confusing, since it first sought to recover the premium for the full policy year, later seeking to give notice of cancellation of the policy for nonpayment of premium, effective January 10, 1969. It finally settled for the sum actually due it to July 11, 1968, the date when the Leibolds secured their new insurance from Providence.

The trial court did not deal with the question of the effect of the insureds' notification in June, 1968 to the broker through whom they had obtained the policy from Security that they were finished with him and would get another broker and another

carrier; nor did it deal with the proof of nonpayment by the insured of the premium due for the policy. Rather, it considered and rejected Security's secondary argument that its policy had been canceled under the provisions of section 313 of the Vehicle and Traffic Law, which delineates the method to be used by an insurer that desires to cancel a policy. The pertinent part of that section reads: "No contract of insurance or renewal thereof for which a certificate of insurance has been filed with the commissioner shall be terminated by cancellation by the insurer * * *. until at least twenty days after mailing to the named insured at the address shown on the policy a notice of termination, except where the cancellation is for non-payment of premium in which case ten days notice of cancellation by the insurer shall be sufficient, *provided, however, if another insurance contract has been procured, such other insurance contract shall, as of its effective date and hour, terminate the insurance previously in effect with respect to any motor vehicles designated in both contracts.* Time of the effective date and hour of termination stated in the notice shall become the end of the policy period " (emphasis supplied).

The clear intent and purpose of the foregoing provision is to protect an insured against *immediate* loss of his insurance and thereby of his automobile registration, if, *and only if, his insurer has elected* to cancel his policy. This is accomplished by the requirement in the statute that an insurer must give notice of either 20 or 10 days, as the case may be, of its intention to cancel, in order to enable the insured, during the intervening period, to obtain the statutorily required insurance elsewhere (*Teeter* v. *Allstate Ins. Co.,* 9 A D 2d 176). The only time the policy is deemed canceled before the expiration of the 10- or 20-day notice period is when, *during that period,* the insured has procured other insurance, " with respect to any motor vehicles designated in both contracts " of insurance and has thereby complied with the compulsory insurance requirements of article 6 of the Vehicle and Traffic Law (the Motor Vehicle Financial Security Act). Here, section 313 never came into play, because the cancellation was by the insureds, not the insurer. Hence, the utilization of that section by the trial court in arriving at its determination was unwarranted and inappropriate. Here, as we have noted, the policy was canceled by the insureds, not the insurer, when Mrs. Leibold obtained substitute coverage from Providence on July 11, 1968. What Providence is seeking to do is to profit by the failure of the insureds or their for-

mer broker to advise Security of the cancellation. This, we hold, it cannot do.

That Mrs. Leibold had the right to cancel her policy with Security at any time is clear (cf. *Cosmopolitan Mut. Ins. Co. v. Lumbermen's Mut. Cas. Co.*, 20 N Y 2d 145, 152).

Here, no risk matured and no rights of any third party were affected on July 11, 1968, when Mrs. Leibold obtained coverage from Providence. When she did so, with the intent that such new coverage supersede her policy with Security, the latter's coverage terminated as a matter of law.

The judgment appealed from should be reversed, on the law and facts, and it is declared that Security's liability under its policy of automobile insurance terminated on July 11, 1968 and that it has no liability with respect to the accident in question.

HOPKINS, Acting P. J., CHRIST, BRENNAN and BENJAMIN, JJ., concur.

Judgment of the Supreme Court, Queens County, dated September 11, 1972, reversed, on the law and the facts, with costs to appellant against plaintiff, and it is declared that the liability of defendant Security Mutual Insurance Company under its policy of automobile insurance terminated on July 11, 1968 and that it has no liability with respect to the accident in question.