OPINION OF THE COURT
Sidney Leviss, J.
This matter was originally brought on by application of the petitioner Nassau Insurance Company, to permanently stay respondent Leon Lucas from arbitrating an uninsured motor *1025 ist claim with petitioner upon the ground that the offending vehicle involved in the collision herein was insured for automobile liability insurance at the time of the alleged occurrence.
The application eventually resulted in an order of the Hon. Ann Dufficy dated April 26, 1979, wherein the Great American Insurance Company and the Insurance Company of North America were added as party respondents. The order granted the application staying arbitration pending the determination of the issue of whether or not the offending vehicle was insured or uninsured at the time of the occurrence. A hearing was directed to be held for the purposes of such determination.
At the hearing, the parties agreed that the court would determine the issue of whether the offending vehicle was insured or uninsured at the time of the occurrence, based upon an agreed and stipulated statement of facts together with certain exhibits to be used as evidence therein.
Petitioner Nassau Insurance Company (hereinafter referred to as "Nassau”) insured a motor vehicle wherein the respondent Leon Lucas is a covered person under a policy of automobile liability insurance, a portion of which is entitled the New York Accident Indemnification Endorsement, and said policy was in effect on November 17, 1977.
On November 17, 1977, the insured’s (Lucas) motor vehicle was involved in an automobile collision at West 155th Street and Seventh Avenue, New York City, with another motor vehicle, a 1972 Plymouth owned by Tarrytown Public Livery, Inc. (hereinafter referred to as "Tarrytown”), and operated by one Fernando E. Marrero.
Respondent Lucas is claiming that the 1972 Plymouth motor vehicle owned by Tarrytown was uninsured at the time of the occurrence and has served a demand for arbitration upon petitioner, Nassau, his insurer, based upon a claim for bodily injuries allegedly sustained in the aforesaid occurrence by an uninsured vehicle.
The petitioner, Nassau, originally claimed that the 1972 Plymouth owned by Tarrytown was insured at the time of this occurrence with Great American Insurance Company (hereinafter referred to as "Great American”) for automobile liability insurance in an amount sufficient to meet the financial security laws of the State of New York, and, therefore, this occurrence is not an accident with an uninsured motor vehi *1026 cle. Nassau has, on the record, withdrawn its claim that the 1972 Plymouth motor vehicle owned by Tarrytown was insured by Great American, and now claims that such vehicle was insured on the date of the occurrence, November 17, 1977, by the Insurance Company of North America (hereinafter referred to as "INA”). INA, on the other hand, denies that it had a policy of insurance in effect on November 17, 1977, with Tarrytown.
The facts are that on or about September 26, 1977, Tarry-town, acting through its broker, Gottesman Agency Inc., applied to the New York Automobile Insurance Plan for automobile insurance through the assigned risk pool for its 1972 Plymouth motor vehicle. It enclosed a check for $400 with such application to cover the premium therefor. On or about September 29, 1977, INA was designated by the New York Automobile Insurance Plan to issue a policy for insurance to Tarrytown for said Plymouth motor vehicle. On October 24, 1977, INA acknowledged receipt of such application for insurance to be effective as of October 6, 1977 and requested additional information with respect thereto. On November 1, 1977, Gottesman, on behalf of Tarrytown, requested by written notification to INA, that the insurance be canceled flat, less $10. INA on November 4, 1977 issued its Policy No. NAR 230574 to Tarrytown for the 1972 Plymouth as a rented public auto. The effective dates of this policy were from October 6, 1977 through December 31, 1977. Such policy was received by Gottesman on November 9, 1977. On the same date, November 9, 1977, Gottesman again sent written notice to INA to the effect that it received the said policy and was returning same in order to complete the cancellation of the policy. On November 16, 1977 Gottesman again wrote to INA returning the unused FH-1, and requesting flat cancellation be processed. The parties agree that such written request was received by INA on November 17, 1977.
At some later date, INA returned the insurance premium to Gottesman, Tarrytown’s broker. On November 17, 1977, respondent Leon Lucas was allegedly injured when his motor vehicle, which was insured by Nassau and which policy contained the usual uninsured motorist coverage endorsement, collided with the 1972 Plymouth owned by Tarrytown. It was stipulated that respondent INA had written a policy of auto liability insurance in conformity with the provisions of section 370 of the Vehicle and Traffic Law for the vehicle owned by *1027 Tarrytown which was involved in this occurrence of November 17, 1977.
It was further stipulated on the record "by and between Nassau Insurance Co., the petitioner, and Great American Insurance Co. that Nassau withdraws its claims against Great American with prejudice, without costs, interests, or disbursements to any party upon the concession by Great American that it had written a policy of automobile liability insurance to the Tarrytown Livery Service in conformity with Article Six of the Insurance Law, and that, in view of the concession by the Insurance Company of North America that it had written a policy of automobile liability insurance for the same insured and for the same vehicle effective October sixth, 1977. It is agreed that in view of the provisions of section three thirteen of the Vehicle and Traffic Law, the writing of the policy by the Great American and by the Insurance Company of North America constituted a statutory cancellation of the Great American policy.” Therefore, respondent, Great American Insurance Company, is no longer a party to this proceeding.
Pursuant to designation by the New York Automobile Insurance Plan, more commonly known as the "Assigned Risk Plan”, INA issued a policy of automobile liability insurance in conformity with section 370 of the Vehicle and Traffic Law, to Tarrytown for its Plymouth motor vehicle, effective as of October 16, 1977. Section 10 of the "Conditions” part of the policy contained the following provision with respect to cancellation.
"Cancellation. This policy may be cancelled by the Named Insured by surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the Company by mailing to the Named Insured at the address shown in this policy, written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the policy shall become the end of the policy period. Delivery of such written notice either by the Named Insured or by the Company shall be equivalent to mailing.
"If the Named Insured cancels, earned premiums shall be computed in accordance with the customary short rate table *1028 and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.”
An endorsement for use in conjunction with a standard provisions automobile liability policy, in compliance with section 370 of the Vehicle and Traffic Law, and forming a part of this INA policy contained the following cancellation provision. "2. Cancellation of the policy shall not become effective until twenty days after receipt of written notice of such cancellation by the office of the Commissioner of Motor Vehicles at Albany or New York, except with the consent of said Commissioner. If the policy is cancelled, earned premiums shall be computed pro rata, except, if the named insured cancels and places the insurance with another Company during the policy period, earned premiums shall be computed in accordance with the customary short rate table and procedure.”
In conformity with the cancellation provisions of the policy, Tarrytown, acting through its agent Gottesman, on November 1, 1977, by written notification to INA, requested that the insurance policy be "cancelled flat”, less $10. This means that the binder or policy is canceled from its inception without any premiums being collected. Nevertheless, INA on November 4, 1977 issued its Policy NAR 230574 to Tarrytown. The policy was received by Gottesman on November 9, 1977, the effective dates of the policy being October 6, 1977 through December 31, 1977. On the very same day, November 9, 1977, Gottesman sent written notice to INA again requesting cancellation and returned the policy to INA in order to, as it said, "complete cancellation of the policy.” "An insured and an insurer are * * * free to agree upon the 'cancellation flat’ of a binder before matured risk and so long as the rights of no third party are affected (cf, e.g., Aetna Cas. & Sur. Co. v. O’Connor, 8 NY2d 359, 364 [1960]; Lauritano v. American Fid. Fire Ins. Co., 3 AD2d 564, 567-568 [1st Dept., 1957] affd. 4 NY2d 1028 [1958]), there is no reason why an insured may not effectively cancel 'flat’ even after the occurrence of an insurable accident.” (Cosmopolitan Ins. Co. v Lumbermen’s Cas. Co., 20 NY2d 145, 152.)
Couch’s Cyclopedia of Insurance Law (1967 ed, vol 17, § 67:100) states as follows: "As a consequence of the unilateral *1029 character of cancellation by notice of the insured, no act by the insurer is required to make the cancellation effective. Specifically, it is not required that the insurer approve or accept the cancellation, and the request of the insured that the policy be canceled accomplishes that result without any action by the insurer.”
In view of the above, it is evident that the insured, acting pursuant to the cancellation provisions of the policy, effectively canceled the said policy of insurance with INA at some point prior to November 17, 1977, the date of the accident, unless the policy or the endorsement which is part of the policy, pursuant to section 370 of the Vehicle and Traffic Law, requires further action in order to cancel the policy.
The cancellation clause of the main body of the policy does not require anything further of the insured to cancel the policy. The endorsement required on all such policies in compliance with section 370 of the Vehicle and Traffic Law is silent as to any action required to be taken by the insured to cancel the policy.
In Providence Washington Ins. Co. v Security Mut. Ins. Co. (43 AD2d 213, 217), Justice Shapiro, speaking for the unanimous court, said: "Here, section 313 never came into play, because the cancellation was by the insureds, not the insurer.”
Therefore, article 6 and specifically section 313 of the Vehicle and Traffic Law delineates the method to be used by an insured that desires to cancel a policy of automobile liability insurance. However, section 313 is not applicable to the case at bar as the vehicle involved herein is a motor vehicle for hire. The statutory requirements for automobile liability insurance with respect to a motor vehicle for hire are governed by section 370 of the Vehicle and Traffic Law and not by section 313. As section 321 of the Vehicle and Traffic Law specifically provides that article 6 shall not apply to any motor vehicle for the operation of which security is required to be furnished under section 370, the cancellation provisions as found in section 370 would control with respect to the case at bar.
The cancellation provisions of section 370 nowhere mention any method of cancellation by the insured. By analogy with and in harmony with section 313, this court is of the opinion that section 370 also delineates the method to be used by an insurer that desires to cancel an automobile liability policy covering a motor vehicle for hire. It seems clear to the court *1030 that the purpose and intent of the cancellation provisions contained in both sections 313 and 370 of the Vehicle and Traffic Law are to protect an insured against immediate loss of his insurance and thereby his registration if, and only if, his insurer has elected to cancel his policy.
In Matter of Country-Wide Ins. Co. v Wagoner (57 AD2d 498), there was a contention that cancellation of a policy by the insurer was ineffectual because of its failure to comply with the notice requirements of section 313 of the Vehicle and Traffic Law. The Appellate Division, Fourth Department, said (at pp 503-504): "the statutory provisions for notice have no application where cancellation is effected by the insured rather than the insurer (Matter of Orefíce [MVAIC], 28 AD2d 854; GEICO v Employers Commercial Ins. Co., 84 Misc 2d 946).”
The Appellate Division, Second Department, in Matter of Orefice [MVAIC] (supra, p 854) stated: "In our opinion, when * * * a contract of automobile liability insurance has been terminated by the insured prior to the contract’s expiration date, section 313 of the Vehicle and Traffic Law does not require the mailing of the notice therein described, for the statute requires such a notice when the contract of insurance is terminated 'by the insurer’.”
As stated before, the above would apply to section 370 as well as section 313 of the Vehicle and Traffic Law.
In* view of the foregoing, the court is constrained to hold that there was no automobile liability insurance in effect on November 17, 1977, the date of the occurrence herein, between IN A and Tarry town, as the insured had effectively terminated such insurance by giving written notice of such cancellation on at least two separate occasions to the insurer at a sufficiently reasonable period of time prior to November 17, 1977. Accordingly, petitioner Nassau Insurance Company’s application to stay arbitration herein is denied.