■ In the Matter of Lucille Fagan, Claimant, and Government Employees Insurance Company, Respondent, v Liberty Mutual Insurance Company, Appellant. — In a proceeding by the Government Employees Insurance Company (GEICO) to stay arbitration demanded under the terms of the

uninsured motorist endorsement of an insurance policy it issued to the claimant, Lucille Fagan, Liberty Mutual Insurance Company appeals from a judgment of the Supreme Court, Kings County (Aronin, J.), dated November 20, 1980, which, after a hearing, determined that the policy issued by Liberty Mutual had not been canceled, granted the petition and permanently stayed arbitration. Judgment reversed, on the law, with costs payable by petitioner GEICO to Liberty Mutual Insurance Company, application denied, and proceeding dismissed. Petitioner is directed to proceed to arbitration. The claimant, Lucille Fagan, pursuant to the uninsured motorist provision of her automobile liability insurance policy, demanded arbitration of her claim with her insurer, GEICO. The claimant alleged that on December 28, 1978, her motor vehicle came into contact with an uninsured motor vehicle owned by one Ellis Smalls. GEICO petitioned to stay arbitration proceedings and joined Liberty Mutual Insurance Company as a party respondent, asserting that the cancellation of Small's insurance policy by Liberty Mutual prior to the date of the accident was ineffective for failure to comply with section 313 of the Vehicle and Traffic Law. Section 576 of the Banking Law governs the cancellation of an insurance policy by a premium finance agency for nonpayment of premiums (see *Gordon v Nationwide Mut. Ins. Co.*, 30 NY2d 427). A "notice of intent to cancel" was mailed by the Premins Company, Inc. (Premins), a premium finance company, to Smalls on November 30, 1978, stating December 15, 1978 as the final date upon which the insured could cure his default by paying the premium in arrears. A copy was also mailed to his insurer, Liberty Mutual. This notice of intent to cancel complied with the time provisions set forth in section 576 (subd 1, par [a]) of the Banking law, which reads, in pertinent part: "Not less than ten days written notice shall be mailed to the insured * * * of the intent of the premium finance agency to cancel the insurance contract unless the default is cured within such ten day period and that at least three days for mailing such notice is added to the ten day notice. A copy of the notice of intent to cancel shall also be mailed to the insurance agent or broker." On December 19, 1978, Premins mailed a "notice of cancellation" to Liberty Mutual and Ellis Smalls, stating that the policy was canceled effective December 20, 1978 at 12:01 A.M. This notice of cancellation literally complied with the language of section 576 (subd 1, par [d]) of the Banking Law, which provides that after the period of time specified in the notice of intent to cancel expires, "the premium finance agency may *thereafter,* in the name of the insured, cancel such insurance contract by mailing to the insurer a notice of cancellation stating when *thereafter* the policy shall be cancelled * * * A copy of the notice of cancellation shall also be mailed to the insured" (emphasis supplied). Trial Term was of the opinion that section 576 of the Banking Law, as amended effective September 1, 1978 (L 1978, ch 565, § 1), did not obviate the requirement to additionally serve a 10-day notice of cancellation on the insured pursuant to section 313 of the Vehicle and Traffic Law[*]. We disagree. Section 313 of the Vehicle and Traffic Law applies to cancellation of an insurance policy "by the insurer", not a premium finance agency. "The clear intent and purpose of the foregoing provision is to protect an insured against *immediate* loss of his insurance and thereby of this automobile registration, if, *and only if, his insurer has elected* to cancel his policy" (see *Providence Washington Ins. Co. v Security Mut. Ins. Co.*, 43 AD2d 213, 217). Furthermore, section 576 (subd 1, par [e]) of the Banking Law expressly states that "[n]ot-

---

[*] Section 313 of the Vehicle and Traffic Law was amended in 1980 (L 1980, ch 379, § 1) to provide for 15 days' notice in the event of cancellation by the insurer for nonpayment of premiums, apparently to bring this section into accordance with section 167 of the Insurance Law (cf. *Matter of Nassau Ins. Co.* [*Epps — Public Serv. Mut. Ins. Co.*], 63 AD2d 473).

withstanding that certain provisions of * * * section three hundred thirteen of the vehicle and traffic law * * * are consistent with certain of the provisions of this article, those sections shall not be applicable to cancellation by a premium finance agency under the provisions of this article." Requiring the premium finance agency to additionally serve a notice of cancellation, effective 10 days after service, plus three days if mailed, would be contrary to the purpose and intent of the 1978 amendments to section 576 of the Banking Law (L 1978, ch 565, § 1). Under the section 576 (subd 1, pars [a], [d]), as it read prior to the 1978 amendments, cancellation was effectuated by sending a 10-day "unconditional written notice" of cancellation, plus three days if service was by mail, to the insured and the insurer. Apparently, the insured often construed the notice period as a 10- or 13-day grace period, depending on the type of service, affording the policyholder the opportunity to avoid cancellation and cure any default by remitting the arrears payment prior to the effective date. Contrary to the insured's interpretation, the notice period merely provided the policyholder with an opportunity to renew the policy or procure insurance elsewhere, prior to the effective cancellation date (see *Matter of Country Wide Ins. Co.* [*Meadows*], 63 AD2d 951). Frequently, a policyholder who remitted the amount in default prior to the effective cancellation date would discover, notwithstanding his payment, that his policy had been canceled after the expiration of the prescribed time period. This resulted in coverage lapses. To eliminate this problem of ensuing coverage lapses the Legislature amended section 576 of the Banking Law by substituting a 10-day "notice of intent to cancel" for a 10-day "unconditional written notice" of cancellation. The amendment afforded the insured the opportunity to cure any default by paying the premium within the prescribed time without having the policy lapse, in accordance with the policyholder's previous interpretation of the notice period (see Memorandum of Assemblyman Alan G. Hevesi, NY Legis Ann, 1978, p 328). To impose a 10-day notice of cancellation requirement would reinstate the problem of coverage lapses sought to be corrected by the amended sections, contrary to the Legislature's intent. Accordingly, compliance with the time requirements for notice of cancellation set forth in section 313 of the Vehicle and Traffic Law is not required where cancellation is by a premium finance agency for nonpayment of premiums. Ellis Smalls' policy of insurance issued by Liberty Mutual was effectively canceled, since Premins strictly complied with the "notice of intent to cancel" and the "notice of cancellation" requirements, of section 576 of the Banking Law. Accordingly, the judgment staying arbitration is reversed. Rabin, J. P., Margett, O'Connor and Thompson, JJ., concur.