Eugene MATTHEWS, Plaintiff,

v.

**FIDELITY & GUARANTY INSURANCE UNDERWRITERS, INC., Defendant.**

Civ. A. No. J89–0403(L).

United States District Court,
S.D. Mississippi,
Jackson Division.

Feb. 22, 1990.

W. Brady Kellems, Brookhaven, Miss., for plaintiff.

James L. Carroll, Gregg A. Caraway, Watkins & Eager, Jackson, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant Fidelity & Guaranty Insurance Underwriters, Inc. (FGIU) for summary judgment and the cross motion of plaintiff Eugene Matthews for summary judgment. Each party has responded to the motion of the other. The court has considered the memoranda of authorities together with attachments submitted by the parties and for reasons that follow, concludes that defendant's motion is well taken and should be granted and that plaintiff's motion should be denied.

In 1982, plaintiff obtained through Southwest General Insurance Agency (Southwest) a business automobile insurance policy, policy number BAP015950396.

The policy was issued by FGIU and was to be effective August 15, 1982 through August 15, 1983. Two additional policies, numbered BAP 936899 and AP3 01 1102, were issued to plaintiff by United States Fidelity & Guaranty Company (USF & G), FGIU's parent company. The gross premium owed by plaintiff for the three policies was $14,217, of which amount $12,804 represented the premium for the FGIU policy. Plaintiff entered into a premium finance agreement with Southwest pursuant to which Southwest paid to the insurers the premiums plaintiff owed and plaintiff paid to Southwest $2,843 and agreed to pay monthly installment note payments of $1,338.59. The note, executed by plaintiff on July 26, 1982, provided that upon default of any payment,

> You are irrevocably authorized to cancel any or all such policies from or after at your election the occurrence of any such default or event. Your written statement as to any of these matters shall be sufficient authority for the insurer to accept such cancellation.

That note was immediately assigned by Southwest to Underwriters Services (Underwriters) of Meridian. Upon plaintiff's default in failing to make his January 15, 1983 payment to Underwriters, Underwriters, according to the affidavit of its supervisor, James T. Farmer, on February 2, 1983 mailed a notice of cancellation to F.W. Williams State Agency, a general agent of USF & G and FGIU in Mississippi which was authorized by those insurers to receive notices of cancellation on their behalf. Farmer states that on the same date a notice of the cancellation was also mailed to plaintiff.[1] And, Southwest, the producing agent, received written notice of the cancellation. Pursuant to the request from Underwriters, FGIU cancelled plaintiff's policy. Subsequent to the purported cancellation, plaintiff made no attempt to make any further payments under the note.

On July 14, 1983, an employee of plaintiff was involved in an automobile collision. According to plaintiff, he immediately in-

---

1. Plaintiff has stated that he "does not recall" or "does not remember" receiving any notice relating to cancellation of the policy. Issues regarding the notice of cancellation will be addressed *infra.*

formed Southwest of the accident and was informed that his policy had been cancelled. Over a year later, on November 15, 1984, a lawsuit was filed against plaintiff in the Circuit Court of Pike County, Mississippi on account of alleged injuries arising out of the accident, and on April 29, 1985, a default judgment was entered against plaintiff. At no time during the pendency of that lawsuit did plaintiff advise Southwest or FGIU that he had been made a defendant in a lawsuit. A second suit was filed against the plaintiff on May 2, 1988 by the insurers of persons allegedly injured in the July 14, 1983 accident. Soon thereafter, in May of 1988, plaintiff notified FGIU, for the first time, of the 1984 lawsuit and also notified FGIU of the filing of the May 1988 lawsuit and attempted to tender defense of the suit to FGIU. FGIU responded on May 26, 1988 by denying insurance coverage because the policy had been cancelled. Plaintiff failed to make an appearance in the suit filed May 2, 1988 and a default judgment was taken against him on January 21, 1989.

■ Plaintiff brought the present action on July 14, 1989 seeking to recover damages alleged to have resulted from FGIU's failure to defend and indemnify and further seeking recovery of punitive damages for defendant's alleged willful and intentional breach of contract. In the present motion, FGIU contends that, as a matter of law and based on undisputed facts, the policy in question was properly and effectively cancelled prior to the date of the accident giving rise to plaintiff's claim for benefits, and therefore, the policy was not in effect at the time of that accident. Plaintiff, by his motion, urges that the attempted cancellation of the policy did not comport with the policy or with applicable law and that as a result, the cancellation was invalid and ineffectual. Consequently, he argues that the policy was in effect at the time of and provided coverage for the accident such that defendant's failure and refusal to defend and indemnify constituted a breach of the parties' insurance contract.

Defendant's position is that in the note referenced above, plaintiff appointed Underwriters as his attorney-in-fact with full authority to cancel the policy of insurance upon nonpayment of installments due under that note. In canceling the policy, Underwriters was merely exercising that authority specifically bestowed upon it by plaintiff and indeed, was acting for plaintiff in effecting a valid cancellation. It is provided at Miss.Code Ann. § 87–3–7 (1972) that "a letter of attorney to transact any business need only express plainly the authority conferred." The Mississippi Supreme Court, construing this statute, has stated that "a power of attorney, in order to be valid in this state, need only be a written instrument signed by the principal and expressing plainly the authority conferred." *Kountouris v. Varvaris*, 476 So.2d 599, 604 (Miss.1985). Where these requirements are satisfied, the attorney-in-fact is empowered to deal with and dispose of the principal's personal property and contracts to the extent so authorized. *Id.* In the note or premium financing agreement executed by plaintiff in the present case, he appointed Southwest as his attorney-in-fact and conferred upon Southwest the authority to cancel his policy for the nonpayment of installments. The assignment of the note by Southwest transferred that authority to Underwriters. Nevertheless, plaintiff, in opposition to defendant's motion and in support of his own motion, challenges the propriety of FGIU's having canceled his policy at the direction of Underwriters. Initially, he asserts that the provision of the note by which he authorized the cancellation of his policy in the event of a default under the note is ambiguous since it is unclear as to whom the term "you" is intended to refer. This contention is patently without merit, for under the clear terms of the note plaintiff authorized the payee of the note, initially Southwest and after assignment, Underwriters, to effectuate a cancellation. There is no ambiguity.

■ Plaintiff next declares that any authority to cancel his insurance coverage which he may have granted to another was granted to Southwest and *not* to Under-

writers. He acknowledges that the document containing the note also contains an assignment of the note to Underwriters but claims that the assignment portion of the note is ambiguous or unclear as to what has been assigned. According to plaintiff, it is not clear from the language of the assignment whether it is intended to operate as an assignment of merely the right to payment or whether it is intended to include the cancellation authorization. He claims that there is no language in the assignment purporting to assign the power of attorney but instead, that the assignment refers only to an assignment of the "note." Despite plaintiff's argument, however, the court is of the opinion that the assignment is not ambiguous. The provision by which plaintiff agreed to grant to Southwest the right to cancel the insurance for plaintiff's nonpayment is contained within the body of the note itself. By the unambiguous terms of the assignment, Southwest, "without recourse, ... assign[ed] the aforesaid Note to Underwriters Services, Meridian, MS." There is nothing in the assignment to suggest that anything less than a transfer of the entirety of the rights and obligations under the entire instrument was intended, including the right of the payee to cancel plaintiff's insurance policy if he defaulted in his obligations under the note. Plaintiff's argument in this regard, therefore, must fail.

Plaintiff appears to maintain, alternatively, that regardless of what the note or assignment may state, the assignment should be held ineffective as a matter of law. He reasons that his appointment of Southwest as his attorney-in-fact for purposes of cancellation of his policy created fiduciary obligations which the court should hold were not assignable. This argument, though, is based on a fundamentally flawed premise concerning the nature of the relationship created by the note executed by plaintiff. A power of attorney is a written instrument by which "one person, as principal, appoints another as his agent and confers upon him the authority to perform certain specified acts or kinds of acts on behalf of the principal." 3 Am.Jur.2d *Agency* § 23 (1986). *See Kountouris v.*

*Varvaris,* 476 So.2d at 603–04. The person holding the power of attorney is known as an attorney-in-fact, and that person is "essentially an alter ego of the principal and is authorized to act with respect to any and all matters on behalf of the principal with the exception of those acts which, by their nature, by public policy, or by contract require personal performance." 3 Am. Jur.2d *Agency* § 23. It has been said that

> [u]nless otherwise provided by the parties, a contract of agency may be assigned by the agent.... If a contract of agency involves duties of personal trust or confidence from the agent to his principal it is not assignable unless the principal assents thereto.... Similarly, a contract of agency involving duties or obligations of personal trust or confidence cannot be assigned by the principal without the consent of the agent.

2A C.J.S. *Agency* § 49 (1972) (footnotes omitted). In the court's opinion, the nature of the agency created here by the power of attorney is not such as would give rise to fiduciary obligations on the part of the agent. While perhaps the mere existence of an agency relationship implies that the principal has reposed at least some trust or confidence in his agent, *see* 3 Am.Jur.2d Agency § 210, not all acts performed by the agent will necessarily require the principal's personal trust or confidence. In the case at bar, the sole act which the agent was authorized to perform, the cancellation of insurance in the event of the principal's failure to pay the installments due, was not such an act as would require plaintiff's personal trust. The agent was not given discretion or authorized to exercise its judgment in a manner that would require that plaintiff have had confidence in its good faith; that is, it could not simply choose to cancel the policy, but rather was authorized to act only in the event of a default by the plaintiff (principal). Nor is the nature of the act authorized to be performed by the agent one which would require the personal performance of the principal. *See Saskatchewan Gov't Ins. Co. v. Padgett,* 245 F.2d 48, 53 (5th Cir.1957) (insured could not repudiate authority given

by him to premium finance entity to cancel insurance policy in event of his default and could not claim policy was not subject to cancellation by that entity); *C.A. Daniels v. Nationwide Mutual Ins. Co.*, 258 N.C. 660, 129 S.E.2d 314, 316 (1963) (not necessary that request for cancellation of policy be made personally by insured but is sufficient if made by person acting as agent of insured); *Chamberlain v. Employers' Liability Assur. Corp.*, 289 Mass. 412, 194 N.E. 310 (1935) (cancellation of policy by insured not an act so personal in nature that it cannot be delegated). Consequently, no reason exists for invalidating the agency created by the note or the assignment of the note to Underwriters.[2]

■ Plaintiff next challenges the validity of the purported cancellation of his policy for the reason that he was not given notice by FGIU of its cancellation. According to plaintiff, Mississippi statutory law requires that notice of cancellation have been given and that under the terms of the policy, as well as the statute, such notice could only have been given by FGIU. The statute to which plaintiff refers is Miss.Code Ann. § 83–11–5, which requires that an insurer, which cancels a policy for nonpayment of premium, mail or deliver notice of cancellation to the insured at least ten days prior to the effective date of cancellation. Defendant maintains that it did not cancel the subject policy for nonpayment of premium; instead, plaintiff, in effect, cancelled the policy through his agent for that purpose, Underwriters. Hence, notice of cancellation was not required.

Although there are no Mississippi cases on the issue, ample authority from other jurisdictions supports the validity of premium finance arrangements by which a premium finance company is authorized to di-

rect cancellation of an insured's policy. *See, e.g., Saskatchewan Gov't Ins. Office v. Padgett*, 245 F.2d 48, 53 (5th Cir.1957) (agreement by insured permitting bank which financed premium to cancel policy upon his default not illegal or void); *Prudential Property & Cas. Ins. v. Safeguard Mut. Ins.*, 528 F.Supp. 709 (E.D.Pa.1981); *Fagan v. Liberty Mut. Ins. Co.*, 85 A.D.2d 637, 444 N.Y.S.2d 931 (N.Y.App.Div.1981); *Davis v. Roddie*, 113 N.J.Super. 457, 274 A.2d 297, 300 (1971); *Hayes v. Hartford Accident & Indem. Co.*, 274 N.C. 73, 161 S.E.2d 552 (1968). Moreover, the cases consistently hold that in such circumstances statutory provisions for notice of cancellation by an insurer are inapplicable since the finance company, in requesting a cancellation of coverage, is simply acting in the place and stead of the insured pursuant to the authority explicitly granted by the insured. *See id.* In the court's opinion, the Mississippi Supreme Court would likewise find a cancellation by a premium finance company in such circumstances effective without the necessity of compliance by the insurer with the notice provisions of section 83–11–5.

In the case at bar, plaintiff had the option, under the terms of his policy, of cancelling the policy by so notifying the insurer. The note he executed purported to grant that authority to Southwest. As previously opined, the agreement by which he authorized Southwest to cancel the policy comports with the requirements of Mississippi law for the recognition of the instrument as a valid power of attorney. Additionally, that authority was effectively transferred to Underwriters by virtue of Southwest's assignment of the note such that when Underwriters directed FGIU to cancel the policy it did so as plaintiff's

**2.** The court notes that by its terms, the possibility of assignment was clearly contemplated by the note inasmuch as the note provided that "[a]ll rights conferred upon you (Southwest) shall inure to the benefit of your personal representatives, successors and assigns." Additionally, the assignment, though perhaps not executed by Southwest at the very moment plaintiff executed the note, was itself contained on the same page as the note, directly beneath the following: "If this note is sold to Underwriters the follow-

ing assignment must be executed." Thus, plaintiff could not have been unaware of the possibility that the note would be assigned to Underwriters. Yet he raised no objection either before or after the assignment was made. Indeed, it appears from the evidence presented that on those occasions when he did pay installments under the note, he paid them to Underwriters and therefore implicitly consented to the assignment.

agent. FGIU, therefore, did not unilaterally elect to terminate the coverage but rather in cancelling the policy, acted in accordance with the instructions of plaintiff's agent. A review of section 83–11–5 of the Mississippi Code reveals that it is not concerned with the situation in which the insured cancels coverage but rather addresses only the cancellation of a policy by the insurer. Consequently, the statute, which provides plaintiff's only argument that notice was required, has no application in these circumstances.[3]

■ Aside from the notice question, plaintiff does not take issue with the proposition that a premium finance company may cancel an insurance policy for the insured where the premium finance agreement expressly confers the authority to cancel for nonpayment. He claims, though, that a premium financing plan, entered into with an organization connected to or affiliated with the insurer, is invalid. It is undisputed that both Underwriters and FGIU are subsidiaries of USF & G; Underwriters is the financing arm of USF & G. Plaintiff insists that because of this relationship, Underwriters cannot act as his agent. There is, he claims, too great a conflict of interest to allow Underwriters to act as his attorney-in-fact.

In support of his position, plaintiff relies principally upon *United States Fidelity & Guaranty Co. v. Stewart's Downtown Motors*, 336 F.2d 549 (9th Cir.1964), in which the Ninth Circuit found that an insurer was estopped to rely on a cancellation by a premium finance entity which was a subsidiary of the insurer and was, in the court's opinion, not an agent of the insured but rather an agent of the insurer. Responding to the defendant insurer's contention that the premium finance company, Del Mar, was an agent of the insured, the court observed that,

[t]o say the least, this is a curious form of agency. If Del Mar in fact in any way represented the interests of the insured, that fact has not been called to our attention. It would appear that its interests were entirely adverse to those of the insured.... In fact, Del Mar acted as if it were the insurance company, and used the threat of cancellation as a means of collecting on the note. If it was anyone's agent, it was Fidelity's (the insurer's).

*Stewart's*, 336 F.2d at 552. In reviewing the finance agreement, which is identical to the note executed by plaintiff in the case *sub judice*, the court commented as follows:

To call Del Mar an agent of the insured, on the basis of the words used in the invoice, is sheer fantasy. If it was in fact a separate entity from Fidelity, as Fidelity says it was, it was a creditor of the insured, not their agent.

*Stewart's*, 336 F.2d at 554. Despite these statements, the court noted that the insured had acknowledged that Del Mar had the right to cause cancellation of the policy by virtue of the insured's finance agreement and the cancellation authority granted therein. However, the insured claimed that the insurer was estopped to claim a cancellation because of representations made by an agent of the insurer. In *Stewart's*, following receipt of a notice of cancellation by Del Mar, the insured had been advised by both the procuring agent, Copperstate Insurance Agency, and Del Mar that if the past due installment were paid, reinstatement could be effectuated. The insured, being desirous of assuring the continuation of insurance coverage, made the payment to Del Mar, which in turn sent to the insurer a request for reinstatement. In the interim, an accident occurred for which Fidelity refused coverage due to the prior cancellation by Del Mar. The court con-

---

**3.** As stated, the insurer was not required to provide plaintiff with notice of cancellation since the insured, through its agent, requested the cancellation. Though the agreement here between plaintiff and Underwriters imposed no affirmative obligation on Underwriters to notify plaintiff of any cancellation, it could be argued that Underwriters, as plaintiff's agent, was to so notify under the general principle of full disclo-

sure between agent and principal. *See* 3 Am. Jur.2d, *Agency* § 211. The court need not determine whether such notice would have been necessary under the circumstances since regardless of whether it was or was not, defendant has demonstrated by competent evidence that notice was given, i.e., mailed to plaintiff. *See infra* pp. 762–763.

cluded that the insured had been misled by Copperstate into a belief that the policy would continue in effect when the late premiums were paid. Based on that belief, the insured refrained from procuring coverage elsewhere. And, because Fidelity took no action to indicate to the insured that, contrary to the representations of its agent, the late payment would not maintain the policy (that is, since Fidelity gave no notice of cancellation), the court held that the insurer was estopped to claim cancellation as a defense to payment under the policy. *Id.* at 556–57.

As is plainly apparent, *Stewart's* presents a far different scenario than that which is revealed in the case at bar. It is undisputed here that the plaintiff/insured made no contact with Southwest or Underwriters or with FGIU after the payment of his December 1982 installment. At the time of the accident which underlies this dispute, plaintiff had been in arrears for six months and had made no effort to become current in his payments. No representations were made to him by anyone and no actions were taken by anyone, whether his agent or an agent of the insurer, that would have indicated that coverage remained in effect. Thus in this case, unlike *Stewart's*, there is no basis for a finding of estoppel since the insured in no way relied on or was misled by any acts of the defendant insurer.

As stated, Underwriters is a subsidiary of USF & G and is the finance operation of that insurer. The defendant insurer in this case, however, is FGIU, not USF & G. The sole connection between FGIU and Underwriters is that the two entities share the same parent company. Even under the *Stewart's* rationale, Underwriters could not

be considered an agent of FGIU since, while they each have a relationship with USF & G, there has not been shown to exist any relationship between them. Nor has it been demonstrated that as between USF & G and FGIU, or as between USF & G and Underwriters, there is anything more than a mere parent/subsidiary relationship. More to the point, it has not been shown that either FGIU or Underwriters is an alter ego of USF & G such that they should be treated as the same entity. In any event, under Mississippi law, two or more entities are considered to be separate and distinct, even where one wholly owns the other, unless there is a showing of illegitimate purpose or control. *See Murdock Acceptance Corp. v. Adcox,* 245 Miss. 151, 138 So.2d 890 (1962). There has been no showing by plaintiff here that FGIU has any control over Underwriters.[4]

Even assuming there was a relationship between FGIU and Underwriters, as previously stated, plaintiff agrees that a premium payment plan entered into between an insured and a finance company *not so connected with the insured* as to create a conflict of interest is valid and enforceable. Presumably, therefore, had the note at issue here not been assigned to Underwriters when plaintiff defaulted in his installment payments, he would have had no objection to Southwest's having directed the cancellation of his policy in precisely the manner as was actually undertaken by Underwriters. In the court's opinion, the fact that Underwriters had some connection to the insurer makes no practical difference in terms of the interests, rights and obligations owed to plaintiff.[5] That is, Under-

4. Though not presented with the issue, the court would likely view this case differently if plaintiff had presented evidence to demonstrate that Underwriters was an alter ego of the insurer. For an example of a case addressing that circumstance, *see Clark v. Employers' Mutual Cas. Co.,* 90 F.2d 667 (8th Cir.1937), in which the active managing officers of the insurer also financed premiums due the insurer. The court there concluded that the insured's contract, which authorized the managing officers of the insurance company to, in their discretion, cancel his policy without notice to the insured, amounted, "in all practical intent, to the same thing as authorizing the insurance company it-

self to do so." *Clark,* 90 F.2d at 671. Ultimately, the court held the finance contract void because a state statute prohibited the making of agreements that conflicted with statutory notice requirements. *Id.* at 670–71.

5. Again assuming a relationship between FGIU and Underwriters, this situation is, in many respects, analogous to the service of process cases in which it is recognized that an affiliate of the plaintiff or even the plaintiff itself, if so appointed by defendant, may receive service of process on behalf of the defendant. The most notable case so holding is *National Equipment*

writers, after the assignment, occupied the same position relative to plaintiff as had Southwest.

Additionally, the court in *Stewart* did not hold that Del Mar, by virtue of its affiliation with the insurer could not have validly requested cancellation of the policy. The court merely opined that the relationship between the insured and Del Mar was more akin to that of debtor/creditor than principal/agent. And, even assuming that was an appropriate description of the general relationship between those parties, it nevertheless remains the case that the insured, or debtor, explicitly authorized the finance company, or creditor, to cancel the insurance policy in the event of his failure to pay under the parties' contract. For that limited purpose, the insured expressly made Underwriters his agent. Finally, it would in any event seem that the characterization would apply irrespective of whether the "creditor" had an association with the insurer.

The Mississippi Supreme Court has stated that in Mississippi,

> [t]here are two ways and two only in which a policy of insurance in full and unimpaired force may be legally surrendered and canceled; First, under the terms written in the policy itself; and, second, under the terms of a subsequent oral or written agreement.

*Wolverine Ins. Co. v. Taylor*, 312 So.2d 699, 700 (Miss.1975) (quoting *Murphree v. L. & A. Ins. Co.*, 168 Miss. 667, 150 So. 534 (1933)). The policy of insurance issued by FGIU to plaintiff provided for cancellation by the insured. There was nothing in the insurance contract to prevent the insured from entering into a subsequent agreement with a third party authorizing that third party to cancel the contract on behalf of the insured without the necessity of additional affirmative action by the insurer, i.e.,

the giving of notice of cancellation. That is precisely what the plaintiff did. To reiterate, then, it was not essential to the effective cancellation of the policy that the statutory notice requirements be satisfied.

■ Defendant asserts that even if, as plaintiff contends, Underwriters acted as FGIU's agent in its effectuating cancellation of the policy for the nonpayment of premium such that notice of cancellation was required, those notice requirements were met. The court has concluded that notice by the insurer was not necessary. However, assuming merely for the sake of argument both that notice was required and that Underwriters was FGIU's agent, the court is satisfied on the uncontroverted evidence presented by defendant that such notice was, in fact, given. Section 83–11–5 requires that notice be "mailed or delivered". It has been held that proof of mailing satisfies the notice requirement of the statute. *State Farm Ins. Co. v. Gay*, 526 So.2d 534 (Miss.1988). Thus, an insurance policy can be cancelled by proof of mailing the notice of cancellation, even if the insured claims he did not receive it. *Id.* Defendant has supplied the affidavit of James Farmer in which Farmer states that he is personally aware that notice of cancellation was mailed to plaintiff at the address shown on the policy and on the premium finance agreement. Interestingly, plaintiff has stated that he does "not recall" or does not "remember" receiving any documents relating to cancellation of the policy. In response to questioning concerning what documents plaintiff had received concerning the policy or his default under the note, he stated, "I don't remember, you know, exactly. I can't remember. I mean I gets different stuff from insurance companies all the time. I don't remember getting a notice of cancellation." Though the plain-

---

*Rental, Ltd. v. Szukhent*, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964), in which the Court refused to quash process, despite the fact that service had been made upon the defendant through an agent which was affiliated with the plaintiff; in view of the limited nature of the agency and the requirement that any valid judgment be preceded by due process compliance, the interests of the agent and defendant were

not considered antagonistic in any meaningful sense so as to invalidate the agency. *Szukhent*, 375 U.S. at 317–18, 84 S.Ct. at 415–16. In the court's opinion, simply because the agent involved in the case at bar may have had some relationship to the insurer does not make it any more antagonistic toward plaintiff's interests than it would be if it had no connection whatever to the insurer.

tiff stated in later testimony that he "never got [a cancellation]," in the court's opinion, plaintiff's testimony, considered *in toto,* regard is not sufficient to controvert defendant's affirmative evidence that the notice was mailed.[6]

The notice sent to FGIU, through F.W. Williams State Agency, a copy of which was sent to plaintiff, was dated February 2, 1983 and recited that Underwriters "hereby cancels the policy(ies) at the beginning hours on the date shown above *or such later date (the minimum period in any event) as may be required by law (if more time for giving notice is required)."* The notice purported to direct cancellation immediately or at such later time as the law allowed, thus taking into account the time periods prescribed by statute. In the court's view, the notice was sufficiently clear and definite to effectuate a valid cancellation. And, since the accident occurred more than five months after the notice was mailed, the notice requirements would have been satisfied even if ten days' notice had been required.

Because the court concludes that the policy issued by FGIU to plaintiff was properly and effectively cancelled prior to the accident, it follows that defendant has no liability to plaintiff for any alleged failure to defend or indemnify. It is ordered, therefore, that defendant's motion for summary judgment is granted and it is ordered that plaintiff's cross motion is denied.

A separate judgment shall be entered pursuant to Federal Rule of Civil Procedure 58.

SO ORDERED.

6. Plaintiff's argument that he did not remember receiving notice that his policy had been cancelled is interesting in view of the undisputed fact that for the next five and a half years he did not contact Underwriters or FGIU—only when the second suit was filed against him in 1988 did he communicate with FGIU—and he did not contact Southwest until *after the accident.* At no time did he attempt to pay the past due premiums.